JUDGE RAKOFF

**07 CV 7061**

Roger L. Zissu (RZ 0973)
Richard Z. Lehv (RL 6097)
FROSS ZELNICK LEHRMAN
  & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHNSON & JOHNSON and JOHNSON &
JOHNSON CONSUMER COMPANIES, INC.,

      Plaintiffs

      -against-

THE AMERICAN NATIONAL RED CROSS,
LEARNING CURVE INTERNATIONAL, INC.,
MAGLA PRODUCTS, LLC, WATER-JEL
TECHNOLOGIES, INC., and FIRST AID ONLY,
INC.,

      Defendants.

Civil Action No.



**COMPLAINT**

1.   Plaintiffs, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc., by

their undersigned attorneys, Fross Zelnick Lehrman & Zissu, P.C., for their Complaint against

Defendants, the American National Red Cross ("ARC"), Learning Curve International, Inc.

("Learning Curve"), Magla Products, LLC ("Magla"), and Water-Jel Technologies, Inc. ("Water-

Jel"), First Aid Only, Inc. ("FAO"), allege as follows:

**SUBSTANCE OF THE ACTION**

2.   This complaint contains three causes of action. The first is a cause of action for

contractual and equitable estoppel arising out of representations by the ARC concerning the use

of a design consisting of a red cross, where the two intersecting lines of the cross are of equal

{F0029790 2 }

length. This design is sometimes called a Greek cross and is referred to in this complaint as the "Red Cross Design." The second cause of action is for violation by defendants Learning Curve, Magla, Water-Jel, and FAO of a federal statute, 18 U.S.C. § 706, which prohibits their use of the red Greek cross. The third cause of action is against FAO for breach of an agreement between Plaintiff and FAO. Plaintiffs seek injunctive relief, an accounting of any profits of defendants from their use of the Red Cross Design on their products, attorneys' fees, and such other and further relief as the Court deems just and proper.

## PARTIES

3.    Plaintiff Johnson & Johnson is a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933-7001.

4.    Plaintiff Johnson & Johnson Consumer Companies, Inc. ("JJCCI") is a New Jersey corporation with a main office at 199 Grandview Road, Skillman, New Jersey 08558, and is a subsidiary of Johnson & Johnson. Through its Johnson & Johnson Consumer Products Company Division, JJCCI develops and markets baby care, wound care, first aid, and skin care products that address the needs of the consumer and health care professionals and incorporate the latest innovations.

5.    Defendant American National Red Cross is a federally-chartered corporation with its principal place of business at 430 Seventeenth Street, N.W., Washington, D.C. 20006.

6.    Learning Curve is a Delaware corporation with its principal place of business at 314 W. Superior St., Chicago, Illinois 60610.

7.    Defendant Magla is New Jersey limited liability company with its principal place of business at 159 South Street, Morristown, New Jersey 07960.

8.    Defendant Water-Jel is a New York corporation with its principal place of business at 243 Veterans Boulevard, Carlstadt, New Jersey 07072.

9.    Defendant FAO is a Washington corporation, with its principal place of business at 11101 NE 37th Circle, Vancouver, Washington 98682.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over the subject matter of this action pursuant to Section 1331 of the Judicial Code, 28 U.S.C. § 1331, because it arises under a federal statute. The Court has supplemental jurisdiction over the State law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

11.  This Court has personal jurisdiction over Defendants because they are either incorporated in New York or doing business in this district and the products that are the subject of this action are sold in this district.

12.  Venue is proper in this district pursuant to Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because this is a district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Plaintiffs' Famous Red Cross Design Trademark**

13.  Since at least as early as 1887, Plaintiff Johnson & Johnson, directly or through subsidiaries such as JJCCI, has used as a trademark its famous Red Cross Design. Plaintiffs have used the Red Cross Design for a wide range of first aid and wound care products, including gauze pads, adhesive tape, first aid cream, and first aid kits, which contain such items as adhesive bandages, gauze pads, adhesive tape, analgesics, first aid cream, health care gloves, cleansing wipes and instructional manuals.

14.  As a result of Plaintiffs' extensive use of the Red Cross Design, that mark has acquired enormous value and has become extremely well known to the consuming public in identifying and distinguishing first aid products from JJCCI The mark has come to represent enormous goodwill of Plaintiffs.

15.  Plaintiff Johnson & Johnson has registered the Red Cross Design in the United States Patent and Trademark Office since at least as early as 1906, under Registration No. 54,308 (Exhibit A hereto), alleging first use in 1887, among other registrations for the Red Cross Design.

{10029790 2 }                          3

**Limited Right of the ARC to Use the Red Cross Design**

16.  The United States Congress chartered the ARC in 1900, after Johnson & Johnson began using its Red Cross Design. Its charter has been amended nine times, most recently in 2007.

17.  Under the ARC's Congressional charter, the ARC has the right to use the Red Cross Design only in "carrying out its purposes," 36 U.S.C. § 300106, which are "to provide volunteer aid in time of war to the sick and wounded . . . ; to act in matters of voluntary relief . . . ; and to carry out a system of national and international relief in time of peace. . . ." 36 U.S.C. § 300102. Carrying out a commercial enterprise or business *is not and never has been* one of the purposes of the ARC.

18.  Indeed, in 1942, Francis Biddle, then Attorney General of the United States, issued an opinion letter stating that the ARC "is not empowered to engage in business of commercial or manufacturing character in competition with private business."

**Federal Criminal Statute Concerning Use of Red Cross Design**

19.  On January 5, 1905, the United States Congress enacted a statute, now codified in 18 U.S.C. § 706, which prohibits the use of "the emblem of the Greek red cross on a white ground," by any "corporation, association or person, other than the American National Red Cross and its duly authorized employees and agents and the sanitary and hospital authorities of the armed forces of the United States." The statute further provides, "This section shall not make unlawful the use of any such emblem, sign, insignia, or words which was lawful on the date of enactment of this title." Because Johnson & Johnson had been using its Red Cross Design on the date of enactment of the statute in 1905, Plaintiffs' use of the Red Cross Design is not prohibited by 18 U.S.C. § 706.

**Cooperation and Coexistence of ARC and Plaintiff**

20.  For over one hundred years, Johnson & Johnson has owned exclusive trademark rights in the Red Cross Design for first aid and wound care products sold to the consuming public,

including first aid kits, while the ARC has at all times since its organization possessed only the right to use the Red Cross Design for charitable purposes.

21. In January 1895, Johnson & Johnson and the ARC entered into an agreement that acknowledges Johnson & Johnson's "exclusive use of a red cross as a trademark and otherwise for chemical, surgical, pharmaceutical goods of every description." Clara Barton executed that agreement on behalf of the ARC.

22. In 1910, Mabel Boardman, volunteer secretary of the ARC for more than forty years, testified before Congress that the ARC "could not interfere" with the rights of senior users of the Red Cross Design. *The Red Cross: Hearings before the Comm. on Foreign Affairs*, 61st Cong., 2d Session, on H.R. 22311 at 354, 356 (April 21, 1910).

23. During a January 24, 1919 hearing held by the House Committee on Patents, the legal adviser of the war council of the ARC testified that use of the red Greek cross for commercial purposes "tends to cheapen the emblem" and bring it into "disrepute." He went on to testify that ARC did not "engage[] in commercial business of any character" and "consistently refused to lend [itself] to any . . . commercial ventures." *To Protect the Name "Red Cross": Hearings Before the Comm. on Patents*, 65th Cong. 3d Session, on H.R. 14330 at 377-78 (January 24, 1919).

24. *The American Red Cross Guide to Marketing Sponsorships*, which the ARC published in February 2000, says that the ARC's use of a red cross is "limited by the fact that the organization does not own or fully control the use of the Red Cross emblem and by a concern that commercial use of the name or emblem would be inappropriate and, in some military, international, and other contexts, potentially dangerous."

25. Until recently, Johnson & Johnson and the ARC have cooperated with each other amicably and effectively in exercising and enforcing their respective rights in the Red Cross Design. Each has recognized and respected the clear line that separates their lawful uses.

26. Further, ARC itself recognized in a 1980 flyer entitled "The Red Cross Emblem: its History, its Usage, its Restrictions," that the ARC has no ownership interest in the red Greek

cross and that it is merely "a licensee." The ARC also acknowledged in that brochure that "although the American Red Cross is one of the entitled users of the Red Cross name and emblem as specified in the federal statute [18 U.S.C. § 706], it has no authority to interpret, waive, or relax the stipulations" of that statute. Accordingly, the ARC has no power to permit others to do what the federal statute prohibits, namely, use the red Greek cross.

27. Over the years, the ARC and Johnson & Johnson have cooperated by sending "cease and desist" letters to third parties who have used the red Greek cross on commercial products, with Johnson & Johnson asserting its trademark rights in the Red Cross Design, and the ARC relying on 18 U.S.C. § 706.

**ARC's Recent Purported License to Other Defendants**

28. Recently, ARC has purported to authorize defendant Learning Curve to use the red Greek cross on and in connection with first aid kits. These first aid kits are sold by Learning Curve in mass-market retailers, such as Target stores, and they compete directly with JJCCI's first aid kits sold under the Red Cross Design.

29. ARC has also purported to authorize defendant Magla to use the red Greek cross on medical examination gloves.

30. ARC has also purported to authorize defendant Water-Jel to use the red Greek cross on a hand sanitizer product. This hand sanitizer product is sold in mass-market retailers, such as Wal-Mart.

31. ARC has also purported to authorize defendant FAO to use the red Greek cross on and in connection with first aid kits. These first aid kits are sold by FAO in mass-market retailers, and they compete directly with JJCCI's first aid kits sold under the Red Cross Design.

32. ARC has also purported to authorize Target Brands, Inc. to use the red Greek cross on first aid kits sold in Target stores. These kits compete directly with JJCCI's first aid kits sold under the Red Cross trademark.

33. However, the ARC has admitted that "it has no authority to interpret, waive, or relax the stipulations" of Section 706, and therefore it cannot, under the guise of a license agreement, give these companies permission to violate the federal statute.

## FIRST CLAIM FOR RELIEF FOR CONTRACTUAL AND EQUITABLE ESTOPPEL

34. The ARC's actions, including statements that it would limit itself to non-commercial use of the Red Cross Design, that it would refrain from engaging in commercial use of that design, that Johnson & Johnson has "exclusive use of the symbol of a red cross as a trade-mark and otherwise for chemical, surgical, and pharmaceutical goods of every description," and that the ARC would not authorize others to use the Red Cross Design, were inaccurate, as evidenced by the ARC's recent purported license of Learning Curve, Magla, Water-Jel, FAO and other companies to use the Red Cross Design.

35. Plaintiffs relied on the ARC's representations. The ARC's actions, including the foregoing statements by the ARC, have led Plaintiffs to believe that the ARC would not enter into such commercial licenses and to conduct their business on the basis of such belief.

36. Plaintiffs are being damaged by the foregoing statements and conduct by the ARC.

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF 18 U.S.C. § 706

37. The commercial use by Learning Curve, Magla, Water-Jel and FAO of the Red Cross Design on and in connection with first aid kits, medical examination gloves and hand sanitizers offered for sale to the consuming public is in violation of 18 U.S.C. § 706.

38. The ARC's purported license of the Red Cross Design to the Learning Curve, Magla, Water-Jel, and FAO induced and contributed to those violations of that statute, and is in violation of the ARC's authority under its charter.

39. Plaintiffs are damaged by the foregoing conduct.

{F0029790.2 }                                7

## THIRD CLAIM FOR RELIEF FOR BREACH
## OF CONTRACT AGAINST DEFENDANT FAO

40. On July 27, 2004, based on its rights in its Red Cross Design, J&J opposed FAO's Application Serial No. 76/394,583 to register the mark FIRST AID ONLY and Design. J&J asserted that the design feature of FAO's mark, a cross design, would be likely to cause confusion if displayed in red or orange or in white on a red or orange background.

41. To resolve that opposition, FAO and Johnson & Johnson entered into an agreement, effective as of July 7, 2005 (the "FAO Agreement"), in which Johnson & Johnson agreed to withdraw its opposition to FAO's registration of the mark, on condition that FAO "not use the design feature of the mark…in whole or in part in the color red or orange, or in white on a red or orange background, or colorable imitations hereof, in connection with the goods identified in said application." (FAO Agreement, Paragraph 1, Exhibit B hereto.)

42. FAO is in breach of Paragraph 1 of the FAO Agreement by using the design shown in Application Serial No. 76/394,583 in red on a variety of FAO goods and by using the Red Cross Design on a variety of FAO goods.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

(a) Permanently enjoining defendants, their officers, licensees, agents, and all those persons in concert or participation with any of them, from using the Red Cross Design (and in the case of FAO from using the design shown in Application Serial No. 76/394,583) on or in connection with any first aid kits, wound care products, medical examination gloves, hand sanitizers or related products offered for sale to the consuming public and from licensing or authorizing others to do so;

(b) Directing that defendants deliver up to Plaintiffs for destruction all goods, labels, tags, signs, packages, promotional marketing materials, advertisements, and other items bearing the Red Cross Design (and, in the case of FAO, bearing the design shown in Application Serial No. 76/394,583) that have been used or that may be used in the sale to

the consuming public of commercial products, and that are currently in their possession or under their control;

(c) Awarding Plaintiffs all profits, gains, and advantages, derived by Defendants from their unlawful conduct;

(d) Awarding Plaintiffs exemplary and punitive damages to deter any further willful misconduct of the nature complained of in this complaint;

(e) Awarding Plaintiffs their costs and disbursements incurred in this action, including its attorneys' fees;

(f) Awarding Plaintiffs interest, including pre-judgment interest on the foregoing sums; and

(g) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, NY
      August 7, 2007

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
    Roger L. Zissu (RZ 0973)
    Richard Z. Lehv (RL 6097)
    866 United Nations Plaza
    New York, NY 10017
    Tel. (212) 813-5900
    Fax (212) 813-5901

*Attorneys for Plaintiffs*

Exhibit A

# 54308
RED CROSS
Design
(renewal)



# The United States of America

# CERTIFICATE OF RENEWAL

## Reg. No. 54,308

Application to renew the above identified registration having been duly filed in the Patent and Trademark Office and there having been compliance with the requirements of the law and with the regulations prescribed by the Commissioner of Patents and Trademarks,

This is to certify that said registration has been renewed in accordance with the Trademark Act of 1946 to Johnson & Johnson of New Brunswick, New Jersey

New Jersey corporation
and said registration will remain in force for twenty years from    June 26, 1986
unless sooner terminated as provided by law.

In Testimony Whereof I have hereunto set my hand and caused the seal of the Patent and Trademark Office to be affixed this eighth day of July 1986.



Commissioner of Patents and Trademarks

Ex. A

No. 54,308.

# TRADE-MARK.

REGISTERED JUNE 26, 1906.

JOHNSON & JOHNSON.

MEDICAL AND SURGICAL PLASTERS.

APPLICATION FILED OCT. 17, 1905.



PROPRIETOR

*Johnson & Johnson*

by

*Archibald Cox*

**ATTORNEY**

*(over)*

# RENEWED

# UNITED STATES PATENT OFFICE.

## JOHNSON & JOHNSON, OF NEW BRUNSWICK, NEW JERSEY.

### TRADE-MARK FOR MEDICAL AND SURGICAL PLASTERS.

No. 54,806.    Statement and Declaration.    Registered June 26, 1906.

Application filed October 17, 1905. Serial No. 13,866. Used ten years.

## STATEMENT.

*To all whom it may concern:*

Be it known that the JOHNSON & JOHNSON, a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey, and located and doing business in the city of New Brunswick, county of Middlesex, in said State, has adopted for its use a trade-mark, of which the following is a description.

The trade-mark is illustrated in the accompanying drawing, wherein appears a representation of a red Greek cross.

The trade-mark has been continuously used in the business of said corporation by it and its predecessors, from whom it derived title, since 1887.

The class of merchandise to which the trade-mark is appropriated is medicinal and surgical articles, and the particular description of goods comprised in said class upon which said trade-mark is used is medicinal and surgical plasters.

The trade-mark is usually displayed on the wrappers, spools, containers, boxes, and other receptacles holding the goods by printing it directly thereon and by means of labels and in other customary ways.

JOHNSON & JOHNSON.
R. W. JOHNSON,
*President.*

Witnesses:
EDWARD NORRIS,
LOUIS H. LEITHEISER.

## DECLARATION.

State of New Jersey, county of Middlesex, ss:

R. W. JOHNSON, being duly sworn, deposes and says that he is president of JOHNSON & JOHNSON, a corporation, the applicant named in the foregoing statement; that he believes that the foregoing statement is true; that he believes the said corporation is the owner of the trade-mark sought to be registered; that no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use said trade-mark either in the identical form or in any such near resemblance thereto as might be calculated to deceive; that said trade-mark is used by said corporation in commerce among the several States of the United States and particularly between New Jersey and Illinois

and between the United States and foreign nations and particularly with Cuba and Canada; and that the description drawing and specimens presented truly represent the trade-mark sought to be registered; and that the mark has been in actual use as a trade-mark of the applicant or its predecessors from whom it derived title for ten years next preceding the passage of the act of February 20, 1905, and that, to the best of his knowledge and belief, such use has been exclusive.

R. W. JOHNSON.

Subscribed and sworn to before me this 14th day of Sept., 1905.

[L. s.]    CHARLES A. McCORMICK,
*Notary Public.*

Renewed June 26, 1946 to Johnson & Johnson, of New Brunswick, New Jersey, a corporation of New Jersey.

Republished, under the Act of 1946, Jan. 31, 1950, by Johnson & Johnson, New Brunswick, N. J.

AFFIDAVIT SEC. 8
ACCEPTED

AFFIDAVIT SEC. 15
RECEIVED Feb. 3, 1955



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Aug 7 04:10:03 EDT 2007*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | RED CROSS |
| **Goods and Services** | IC 003. US 044 051. G & S: cotton for personal use. FIRST USE: 18980000. FIRST USE IN COMMERCE: 18980000 |
| | IC 005. US 044. G & S: sterile cotton for medical use. FIRST USE: 18980000. FIRST USE IN COMMERCE: 18980000 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74422554 |
| **Filing Date** | August 6, 1993 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 2, 1994 |
| **Registration Number** | 1870955 |
| **Registration Date** | January 3, 1995 |
| **Owner** | (REGISTRANT) JOHNSON & JOHNSON CORPORATION NEW JERSEY One Johnson & Johnson Plaza New Brunswick NEW JERSEY 08933 |
| **Attorney of Record** | RICHARD F. BIRIBAUER |
| **Prior Registrations** | 0054308 |
| **Type of Mark** | TRADEMARK |

| Register | PRINCIPAL |
| --- | --- |
| Affidavit Text | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20050801. |
| Renewal | 1ST RENEWAL 20050801 |
| Live/Dead Indicator | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Int. Cl.: 5

Prior U.S. Cls.: 18 and 44

## United States Patent and Trademark Office

Reg. No. 1,889,576
Registered Apr. 18, 1995

## TRADEMARK
### PRINCIPAL REGISTER



JOHNSON & JOHNSON (NEW JERSEY CORPO-
RATION)
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ 08933

FOR: FIRST AID KITS, ADHESIVE BAN-
DAGES, TOPICAL PREPARATIONS FOR MED-
ICAL AND THERAPEUTIC USE, MEDICAL
ADHESIVE TAPE, GAUZE, STERILE COTTON
FOR MEDICAL PURPOSES, AND WOUND
DRESSINGS, IN CLASS 5 (U.S. CLS. 18 AND 44).

FIRST   USE   0-0-1898;   IN   COMMERCE
0-0-1898.

OWNER OF U.S. REG. NO. 54,308.

THE DRAWING IS LINED FOR THE COLOR
RED.

SER. NO. 74-422,859, FILED 8-9-1993.

PATRICIA HORRALL, EXAMINING ATTOR-
NEY

Int. Cl.: 3

Prior U.S. Cl.: 51

**United States Patent and Trademark Office**

Reg. No. 1,888,143
Registered Apr. 11, 1995

## TRADEMARK
### PRINCIPAL REGISTER



JOHNSON & JOHNSON (NEW JERSEY CORPO-
    RATION)
ONE JOHNSON & JOHNSON PLAZA
NEW BRUNSWICK, NJ 08933

   FOR: COTTON FOR COSMETIC USE, IN
CLASS 3 (U.S. CL. 51).
   FIRST   USE   0-0-1898;   IN   COMMERCE
0-0-1898.

OWNER OF U.S. REG. NO. 54,308.

THE DRAWING IS LINED FOR THE COLOR
RED.

SER. NO. 74–422,556, FILED 8–6–1993.

PATRICIA HORRALL, EXAMINING ATTOR-
NEY

Exhibit B

## AGREEMENT

THIS AGREEMENT, made effective as of this __7 A__ day of July 2005, by and between JOHNSON & JOHNSON, a New Jersey corporation, having an address at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933-7001 ("J&J") and FIRST AID ONLY INC., a Washington corporation, having an address at 11101 NE 37th Circle, Vancouver, Washington 98682 ("FAO").

## RECITALS

A.    J&J has used and registered the marks RED CROSS and a Red Cross Design in connection with medical and surgical bandages and dressings, first aid kits, skin creams, and other health care products since long prior to 1905, as evidenced by its ownership of U.S. Reg. Nos. 54,308; 1,870,955; 1,888,143 and 1,889,576.

B.    FAO is the owner of application Serial No. 76/394,583 -- FIRST AID ONLY & Design for goods in classes 5, 10, 16 and 28.

C.    J&J has evidenced its concern to FAO that there may be a likelihood of confusion, mistake or deception with J&J's RED CROSS and Red Cross Design marks if the design feature of FAO's mark appears solely in red or orange or in white on a red or orange background. FAO disagrees with J&J's allegations, but in the interest of avoiding further legal proceedings is willing to enter into this compromise settlement.

D.    The parties are desirous of avoiding any likelihood of confusion, mistake or deception by the public resulting from the use of their respective marks.

## UNDERTAKINGS

NOW THEREFORE, in consideration of the above Recitals, the mutual promises and undertakings set forth in this Agreement, and other good and valuable consideration being extant, the parties agree as follows:

1.    Effective as of the date identified in paragraph 2, below, FAO will not use the design feature of the mark identified in Serial No. 76/394,583 in whole or in part in the color red or orange, or in white on a red or orange background, or colorable imitations thereof, in connection with the goods identified in said application.

2.    Notwithstanding the terms of paragraph 1 above, FAO may continue using the design feature in red in connection with the goods identified in its application for the limited purpose of selling off its existing inventory and packaging which bears the design feature in red until the earlier of: a) December 31, 2005, or b) exhaustion of existing inventory.

3.    J&J will not object to the registration of Serial No. 76/394,583 provided that FAO amends the application to enter the following disclaimer:

Ex. B

> The quadrilaterals in the mark are not displayed in the color red or orange,
> or in white on a red or orange background.

4.  J&J will consent to FAO's amendment of Ser. No. 76/394,583 to include a box border around the mark as currently displayed in this application. In the event the proposed amendment is not accepted by the United States Patent and Trademark Office ("PTO"), FAO agrees that any new application to register the same or similar mark will include the disclaimer set forth in paragraph 3 above.

5.  Within fifteen (15) days of receipt of evidence of the PTO's acceptance of the amendments to Ser. No. 76/394,583 contemplated in paragraphs 3 and 4 hereof, J&J will withdraw Opposition No. 91-161,584 without prejudice.

6.  J&J will not oppose any application or seek to cancel any registration of FAO for a mark in the form discussed herein and with the disclaimer described herein, so long as FAO is in compliance with all terms of this Agreement.

7.  J&J will not object to the use of the mark shown in Ser. No. 76/394,583, as-is, or as proposed, provided that FAO is in compliance with the terms of this Agreement.

8.  Each party may freely assign its marks as set forth in this Agreement. However, by taking an assignment, an assignee shall be deemed to have accepted all of the rights and to perform all of the obligations of the assignor under this Agreement.

9.  This Agreement constitutes the entire understanding between the parties regarding the subject matter (into which all prior negotiations, commitments, representations, inducements and undertakings with respect to the subject matter hereof are merged), and except as provided herein, there are no other oral or written undertakings or agreements between the parties relating to the subject matter hereof. The terms of this Agreement may not be changed except by consent of the parties in writing.

10. This Agreement constitutes and shall be deemed a contract made under the laws of the State of New Jersey for any and all purposes, and shall be interpreted and enforced in accordance with such laws.

11. Each of the parties hereto warrants that this it has the authority to bind itself by the signature of the person who signs this agreement.

12. This Agreement may be executed in identical counterparts with the same force and effect as if the signatures were all set forth on a single instrument. This Agreement is deemed to be executed as of the last day date on which a party signs a counterpart to his Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed on the day, month and year set forth adjacent to each of the parties' signatures hereto.

JOHNSON & JOHNSON

Date: August 25 , 2005

By: _Kaye Foster-Cheek_
    Kaye Foster-Cheek

Title: Vice President


FIRST AID ONLY INC.

Date:  7 - 7 , 2005

By: _____

Title: Chairman

- 3 -