**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOHNSON & JOHNSON and JOHNSON &
JOHNSON CONSUMER COMPANIES, INC.,

               Plaintiffs,

v.

THE AMERICAN RED CROSS, LEARNING
CURVE INTERNATIONAL, INC., MAGLA
PRODUCTS, LLC, WATER-JEL
TECHNOLOGIES, INC., and FIRST AID
ONLY, INC.,

               Defendants.

---

07 Civ. 7061 (JSR/DCF)

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

**ECF CASE
ELECTRONICALLY FILED**

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ............................................................................1

II.  STATEMENT OF FACTS ................................................................................2

    A.   Historical Facts Relevant to J&J's Promissory Estoppel Claim....................2

    B.   Facts Relevant to Johnson & Johnson's Prospective Economic
        Advantage .......................................................................................4

    C.   Terms of the Settlement Agreement with First Aid Only............................4

    D.   Terms of the Settlement Agreement with Water-Jel ...................................5

III. ARGUMENT.....................................................................................................5

    A.   Standards on a Motion to Dismiss .............................................................5

    B.   Count One Fails to State a Claim Tortious Interference with
        Prospective Economic Advantage ..............................................................6

    C.   Count Four Fails to State a Claim for Promissory Estoppel........................9

        1.   The Complaint fails to allege a clear and unambiguous
            promise by the Red Cross to Johnson & Johnson...........................10

        2.   The Complaint fails to allege any unconscionable injury ..............12

    D.   Count Seven Fails to State a Claim against First Aid Only........................15

    E.   Count Eight Fails to State a Claim against Water-Jel................................16

    F.   Count Two Is Premised Solely on Counts Seven and Eight and Must
        Be Dismissed Once Those Counts Are Dismissed .....................................18

CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**CASES:**

Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337
 (2d Cir. 2006)..................................................................................................................5

Anostorio v. Vicinanzo, 463 N.Y.S.2d 409, 410 (N.Y. 1983)....................................................13

Camp Summit of Summitville, Inc., v. Visinski, 2007 WL 1152894, at *15
 (S.D.N.Y. Apr. 16, 2007)................................................................................................9

Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).......................................................................6

Deutsch v. Kroll Assocs., 2003 WL 22203740, at *4 (S.D.N.Y. Sept. 23,
 2003) ...............................................................................................................................6, 8

Envirosource, Inc. v. Horsehead Resource Dev. Co. Inc.,
 1996 WL 363091, at *4 (S.D.N.Y. July 1, 1996) ................................................... 6-7

Fine v. Dudley D. Doernberg & Co., 610 N.Y.S.2d 566, 566 (App. Div.
 1994) ...................................................................................................................................6

Gianni Versace S.p.A. v. Versace, 2003 WL 470340, at *2
 (S.D.N.Y. Feb. 25, 2003)...........................................................................................7, 8

Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,
 230 F.3d 549, 556 (2d Cir. 2000)...................................................................................15

Henneberry v. Sumitomo Corp. of Am., 2007 WL 2068346, at *8
 (S.D.N.Y. July 12, 2007) ..............................................................................................9

Herlihy v. Metropolitan Museum of Art, 608 N.Y.S.2d 770, 775
 (Sup. Ct. 1994)...............................................................................................................7

Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture,
 2007 WL 2405689, at *3 (S.D.N.Y. Aug. 24, 2007)..............................................17

Lewis Tree Serv., Inc., et al. v. Lucent Techs., Inc., et al.,
 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000)................................................17

Long v. Marubeni Am. Corp., 2006 WL 1716878, at *2 n.2
 (S.D.N.Y. June 20, 2006)...........................................................................................13

Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) .......................................................6

**TABLE OF AUTHORITIES—Continued**

**Page**

Marvin Inc. v. Albstein, 386 F.Supp. 2d 247, 254 (S.D.N.Y. 2005) ............................................14

Melwani v. Jain, 722 N.Y.S.2d 145, 146 (App. Div. 2001) ...........................................................13

Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 826 (2d Cir. 1994)......................................14

Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 382
    (2d Cir. 2000)........................................................................................................................6

New York City Health & Hosps. Corp. v. St. Barnabas Hosp.,
    782 N.Y.S.2d 12, 14 (App. Div. 2004) ....................................................................................9

North Am. Knitting Mills, Inc. v. International Women's Apparel, Inc.,
    2000 WL 1290608, at *3 (S.D.N.Y. Sept. 12, 2000)........................................................10, 14

Philo Smith & Co. v. Uslife Corp., 554 F.2d 3, 36 (2d Cir. 1977) ...............................................13

PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251,
    252 (S.D.N.Y. 2006) ............................................................................................................6, 9

Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)....................................12

Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 78-79 (S.D.N.Y. 1995).......................................8

Rogers v. Town of Islip, 646 N.Y.S.2d 158, 158 (App. Div. 1996)................................................9

Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000)........................................8

School of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804, 813 (N.Y. 2003)....................................8

Sea Trade Co. v. FleetBoston Fin. Corp., 2004 WL 2029399, at *6
    (S.D.N.Y. Sept. 9, 2004)....................................................................................................10, 14

Shah v. Wilco Sys., Inc., 126 F. Supp. 2d 641, 653 (S.D.N.Y. 2000)...........................................17

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) ................................................................5

Steele v. Delverde S.R.L., 662 N.Y.S.2d 30, 31 (App. Div. 1997) ...............................................15

Sterling Interiors Group., Inc. v. Haworth, 1996 WL 426379, at *21
    (S.D.N.Y. 1996)...............................................................................................................13, 14

Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316, 325-326
    (S.D.N.Y. 2001) ....................................................................................................................14

**TABLE OF AUTHORITIES—Continued**

**Page**

Sun Chem. Corp. v. Excelsior Packaging Group, Inc., 2005 WL 39681,
　　at *4 (S.D.N.Y. Jan. 10, 2005), aff'd, 158 Fed. Appx. 298
　　(2d Cir. 2005).................................................................................................................15

Suthers v. Amgen Inc., 441 F. Supp.2d 478, 486 (S.D.N.Y. 2006)................................10

Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d
　　552, 561 (D.N.J. 2002)....................................................................................................15

WE Transport, Inc. v. Suffolk Transp. Service, Inc., 596 N.Y.S.2d 166,
　　167 (App. Div. 1993)......................................................................................................14

Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)....................17

Zikakis v. Staubach Retail Servs., Inc., 2005 WL 2347852, at *6
　　(S.D.N.Y. Sept. 26, 2005)..............................................................................................10

Zinn v. Seruga, 2006 WL 2135811, at *9 (D.N.J. July 28, 2006) ................................16

**RULE:**

Fed. R. Civ. P. 12(b)(6)...........................................................................2, 5, 7, 14, 17

**OTHER AUTHORITY:**

McKinney's General Obligations Law § 5-701 ....................................................12, 13

Defendants The American Red Cross ("Red Cross"), Learning Curve International, Inc. ("Learning Curve"), Magla Products, LLC ("Magla Products), Water-Jel Technologies, LLC ("Water Jel"),[1] and First Aid Only, Inc. ("First Aid Only") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice Counts One, Two, Four, Seven, and Eight of Plaintiffs' First Amended Complaint ("Complaint").

## I.    PRELIMINARY STATEMENT

Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively "Plaintiffs" or "J&J") have sued to stop the Red Cross from using the Red Cross Emblem when it provides first-aid, disaster-preparedness, and other health and safety products to the American public.  Today, the Red Cross and other defendants have filed answers and counterclaims, but five of J&J's claims are subject to dismissal at this stage of the litigation because they are legally defective on their face.

First, Defendants move to dismiss Count One, in which J&J claims intentional interference with "prospective economic advantage," but fails to plead what economic advantage and how it was interfered with.  Next, Defendants move to dismiss Count Four, in which J&J attempts to allege a promissory estoppel claim by referring to a variety of century-old documents and World-War-era Congressional testimony, but fails to point to a single instance in which the Red Cross ever promised J&J it would not provide first aid, emergency preparedness, or other health products to the American public.  To the contrary, some of the statements alleged by J&J make clear that the Red Cross was doing exactly that during World War II when some of the Congressional hearings occurred.  If anything, the legislative history demonstrates that J&J's

---

[1]      Water-Jel Technologies, LLC is misidentified in the caption as Water-Jel Technologies, Inc.

1

effort in this lawsuit is nothing more than an attempt to persuade this Court to do what J&J was unable to persuade Congress to do over 60 years ago.

Finally, Defendants Water-Jel and First Aid Only move to dismiss Counts Seven and Eight, in which J&J points to certain trademark registration settlements relating to the Water-Jel and First Aid Only trademarks, but fails to allege that either company has included a red cross in its trademark in violation of the settlements.  Nothing in the settlement agreements on which J&J relies remotely precludes these firms from partnering with the Red Cross to provide important first aid or preparedness products bearing their own trademark and also the Red Cross's name and Emblem.  Count Two against the Red Cross must also be dismissed because it is wholly dependent on Counts Seven and Eight.  Count Two alleges that Red Cross induced Defendants Water Jel and First Aid Only to breach their settlement agreements with J&J.  Since no breach of contract is pled in Counts Seven and Eight, Count Two is also deficient on its face.

These five claims should be dismissed pursuant to Rule 12(b)(6).

## II.    STATEMENT OF FACTS

### A.    Historical Facts Relevant to J&J's Promissory Estoppel Claim

In 1894, a bill was pending before Congress that would have banned all previously-existing uses of a red cross emblem—including those alleged uses by J&J.  Compl. ¶ 41.  The only exception in the bill was for entities to whom the American National Red Cross gave written permission to use the emblem.  Id.  If this bill had passed, it would have terminated J&J's right to use a red cross in its trademark; J&J therefore opposed the legislation.  Id. ¶ 42.  In addition, J&J proposed to the Red Cross (through Clara Barton) that they sign an agreement reserving to J&J certain rights to use the mark in the event the pending legislation was enacted as law.  Id. ¶¶ 43-46; see Agreement (Ex. B to J&J's amended complaint).  This is the only

2

statement by the Red Cross cited by J&J that could possibly be characterized as a promise of any kind.

As J&J acknowledges, however, the resulting Agreement stated on its face that it would take effect only if the then-pending bill was enacted.  Compl. ¶ 43, see Agreement at 2 ("if the [pending bill] shall become a statute, de facto, of the United States"); id. at 3 (agreement takes effect only "provided always that the said Protection Bill passes the Fifty-third Congress and becomes a law"; agreement is only "if the said bill shall be passed by both Houses of the Fifty-third Congress and become a defacto statute of the United States").  And as J&J also acknowledges, the bill was not enacted.  Compl. ¶ 47 (acknowledging that the bill "never became law").  Accordingly, with the condition precedent unsatisfied, none of the obligations or rights under the Contingent Agreement ever became effective.

J&J also points to snippets from Congressional hearings at which Red Cross officials testified during the periods of each of the World Wars, first in 1919 and then again in 1942.  See Compl. ¶¶ 61-62, 63-64, 68, 113.  During each of these sets of hearings, individuals speaking on behalf of the Red Cross testified before Congress about the Red Cross's status as a federally chartered nonprofit, about its then-existing practice of selling Red Cross products like first aid kits, and about its policy against becoming a commercial enterprise.  As identified in the Complaint, none of these statements contain any hint of a promise about the Red Cross's future plans regarding the sale of first-aid and disaster-preparedness goods bearing the Red Cross Emblem.

Indeed, during the 1942 hearings, J&J complained about those various sales and argued that unless Congress acted by adopting a then-pending bill, the Red Cross would be permitted to continue.  Compl. ¶ 69.  Congress did not enact the bill.  Id. ¶ 70.

3

**B.      Facts Relevant to Johnson & Johnson's Prospective Economic Advantage**

J&J claims in this lawsuit that the Red Cross is not permitted to provide first-aid and disaster-preparedness kits bearing the Red Cross Emblem to the American public in retail establishments or online.  (J&J is wrong, but we take its allegations as true for purposes of this motion to dismiss.)  J&J then claims that such allegedly unlawful sales interfere with what J&J describes as "ongoing business relationships and opportunities with wholesalers, retailers and consumers of their red-cross-branded products."  Compl. ¶ 97.  J&J provides absolutely no specifics about these alleged relationships and opportunities or about how they are being "interfered with."  J&J then claims that it is suffering some sort of undisclosed "harm" from the Defendants' actions.  There are no factual allegations supporting any of these wholly conclusory and speculative statements.

**C.      Terms of the Settlement Agreement with First Aid Only**

According to J&J's amended complaint, First Aid Only filed a trademark application for use of a mark on specific goods, known as Serial No. 76/394,583.  See Compl. ¶ 129.  J&J objected to the application, and in 2005, the parties entered into a Settlement Agreement.  See id. ¶ 84; Compl. Ex. D.  The Agreement concerned "the goods identified in said application"; as to those goods, the Settlement Agreement provided that First Aid Only would "not use the design feature of the mark identified in Serial No. 76/394,583 in whole or in part in the color red or orange, or in white on a red or orange background."  Compl. Ex. D at Undertakings 1.  Thus, First Aid Only's obligation extends no further than not using the design feature of its mark in application Serial No. 76/394,583 on the specific goods identified in that application.  The Complaint does not allege that any of the First Aid Only goods at issue in the Complaint involve use of the design feature of its mark in the relevant application on goods identified in that application.  See Compl. ¶ 87.

4

### D.    Terms of the Settlement Agreement with Water-Jel

Similarly, J&J alleges that in 1993, Water-Jel filed an application to register a trademark for intended use with certain burn treatments, including burn dressings, lotions, creams, and ointments for the treatment of burns, sunburn, and skin irritation.  <u>See</u> Compl. Ex. C at Recitals B.  Although these products are not among those J&J has now alleged are within its grandfathered rights to use the red cross mark, J&J nevertheless contested the trademark application.  <u>See</u> Compl. ¶ 83.  In settling the dispute, the parties agreed that Water-Jel would not use the Greek Cross feature of its mark.  <u>See</u> Compl. Ex. C at Undertakings 1, 2.  The Settlement Agreement extends no further than Water-Jel's use of its own mark on its own goods.  Since it signed the settlement agreement, Water-Jel has not used the Greek Cross feature of its mark, and J&J does not allege otherwise.  The Complaint alleges only that Water-Jel has partnered with the Red Cross to provide hand sanitation products and that these products bear the Red Cross's Emblem.  Nowhere does J&J allege that Water-Jel's mark contains the Greek Cross feature.  <u>See</u> Compl. ¶ 88.

### III.    ARGUMENT

### A.    Standards on a Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true and draw all inferences in plaintiff's favor.  <u>See</u>, <u>e.g.</u>, <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir. 1994).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  Although the focus should be on the pleadings in considering a motion to dismiss under Rule 12(b)(6), the court will deem the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."

Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).  Dismissal pursuant to Rule 12(b)(6) is appropriate if plaintiff can prove no set of facts that would entitle him or her to relief.  See, e.g., Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).  Under this standard, Counts One, Two, Four, Seven, and Eight should be dismissed.

**B.    Count One Fails to State a Claim Tortious Interference with Prospective Economic Advantage.**

Count One purports to allege tortious interference with prospective economic advantage, but it consists of nothing more than vague allegations that do not sufficiently identify any specific instance of tortious interference or any prospective economic advantage.  See Compl. ¶¶ 96-100.  Count One should therefore be dismissed for failure to state a claim.

To succeed on a claim for tortious interference of prospective economic advantage under New York law, a plaintiff must prove the following elements:  "(1) the existence of business relations between [the plaintiff] and a third party; (2) that [the defendant] intentionally interfered with those relations; (3) that [the defendant] so acted either (a) for the sole purpose of harming [plaintiff] or (b) by wrongful means; and (4) resultant injury to the [plaintiff's] business relations with a third party."  See Deutsch v. Kroll Assocs., 2003 WL 22203740, at *4 (S.D.N.Y. Sept. 23, 2003) (citing Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000)).

A plaintiff alleging this claim must meet a more " 'demanding' " standard than, for instance, a plaintiff seeking relief for other business torts.  See PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) (quoting Fine v. Dudley D. Doernberg & Co., 610 N.Y.S.2d 566, 566 (App. Div. 1994).  This means that to survive a motion to dismiss, a plaintiff must allege specific facts showing that " 'defendant[] intentionally interfered with a known business relationship through wrongful, malicious, or unlawful means and without justification.' "  Envirosource, Inc. v. Horsehead Resource Dev. Co., 1996 WL 363091, at *14

(S.D.N.Y. July 1, 1996) (quoting Herlihy v. Metropolitan Museum of Art, 608 N.Y.S.2d 770,

775 (Sup. Ct. 1994) (alteration and emphasis in original).  To be clear:  "A 'general allegation of

interference with customers without any sufficiently particular allegation of interference with a

specific contract or business relationship' will not withstand a motion to dismiss."  Id. (emphasis

added) (quoting New York state law cases).

      J&J has done precisely what Envirosource held is insufficient to state a claim.  Its

Complaint alleges virtually no details to support either of the first two elements of a claim,

namely (1) the presence of a "specific" third-party business relationship and business

opportunity, and (2) "direct interference with a third party, that is, the defendant must direct

some activities toward the third party and convince the third party not to enter into a business

relationship with the plaintiff."  Gianni Versace S.p.A. v. Versace, 2003 WL 470340, at *2

(S.D.N.Y. Feb. 25, 2003) (emphasis in original and internal citation omitted).  Rather, the

Complaint relies on a vague allusion to some unspecified "ongoing business relationships and

opportunities" with some unnamed "wholesalers, retailers, and consumers of their red-cross-

branded products."  Compl. ¶ 97.  In conclusory fashion, it then alleges that the Defendants have

in some undescribed way  "wrongfully interfered and continue to interfere" with these unnamed,

unspecified business relationships and opportunities.  Id. ¶¶ 98-99.

      This is not enough to state a claim.  Courts in this District, applying New York law, have

consistently granted Rule 12(b)(6) motions to dismiss claims of tortious interference with

prospective economic advantage where, as here, a plaintiff has not pled sufficient facts to support

the required first and second elements of the tort.  See, e.g., Envirosource, 1996 WL 363091, at

*14 (dismissing claim that plaintiff was prevented from entering into unidentified "business

relationships with actual and prospective customers"); Versace S.p.A., 2003 WL 470340, at *2

(dismissing claim because "[plaintiff] makes no attempt to allege a <u>specific</u> business relationship with which [defendant] interfered" and "[plaintiff] fails to allege the manner in which [defendant] interfered with business relationships") (emphasis in original); <u>Scholastic, Inc. v. Stouffer</u>, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000) (same).

In addition, J&J has failed to include any allegations that support the third element of this tort—that Defendants acted "either . . . for the sole purpose of harming [Plaintiff] or . . . by wrongful means." <u>Deutsch</u>, 2003 WL 22203740, at *4. To survive dismissal, a plaintiff must allege specific facts that demonstrate such culpable conduct; it cannot rely on "conclusory" statements. <u>Stouffer</u>, 124 F. Supp. 2d. at 851 (dismissing claim because "conclusory statement . . . that plaintiffs acted 'dishonest[ly], unfair[ly] or improper[ly] (wrongful[ly)' without any further explanation of the means employed" was "insufficient to allege malice or unlawful means"). First, J&J does not even remotely allege that the Defendants did anything "for the sole purpose of harming" J&J. And in claiming some unlawful conduct, J&J relies solely on conclusory statements. It alleges that Defendants engaged in "illegal," "wrongful[]," "intentional[]," and "willful[]" conduct, without providing a single detail regarding either Defendants' alleged conduct or the manner in which that conduct might be deemed tortious. Compl. ¶¶ 98-99. Such vague allegations are insufficient to withstand a motion to dismiss.

The problems with J&J's claim extend to the fourth element of this tort as well. J&J has failed to plead facts sufficient to support the causation element of the claim. An "essential element of this tort is that the plaintiff would have consummated a contract with another person <u>but for</u> the interference of the Defendant." <u>School of Visual Arts v. Kuprewicz</u>, 771 N.Y.S.2d 804, 813 (N.Y. 2003) (emphasis in original) (granting motion to dismiss); <u>see also</u> <u>Riddell Sports Inc. v. Brooks</u>, 872 F. Supp. 73, 78-79 (S.D.N.Y. 1995) (granting dismissal because plaintiffs

failed to allege sufficient facts that "but for defendant's conduct, his prospective business relations would have coalesced into actual contracts").

J&J does not even attempt to plead this causation element—i.e., that "but for" Defendants' conduct, J&J's prospective business opportunities would have resulted in actual contracts or relationships—much less offer sufficient facts that would provide Defendants "fair notice" of the prospective contract and the impact of any act by a Defendant. Instead, J&J resorts to speculation that "Defendants are well aware that harm to Plaintiffs would proximately result from their actions," that Defendants' actions have "wrongfully interfered" with J&J's business relations, and that "Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff." Compl. ¶¶ 98-100. Such "speculative" and conclusory allegations, without further support, do not meet the stringent standards applicable to pleading "but for" causation in a claim of this sort. See Camp Summit of Summitville, Inc., v. Visinski, 2007 WL 1152894, at *15 (S.D.N.Y. Apr. 16, 2007) (granting motion to dismiss).

In short, J&J has fallen far short of providing "fair notice to defendants as to the conduct upon which [plaintiff] bases [its] claim." See PKG Group, 446 F. Supp. 2d at 252. Count One must be dismissed.

### C.    Count Four Fails to State a Claim for Promissory Estoppel.

To state a claim for promissory estoppel under New York law, a plaintiff must allege that "(1) a speaker made a clear and unambiguous promise; (2) it was reasonable and foreseeable for the party to whom the promise was made to rely upon the promise; and (3) the person to whom the promise was made relied on the promise to his or her detriment." Henneberry v. Sumitomo Corp. of Am., 2007 WL 2068346, at *8 (S.D.N.Y. July 12, 2007) (emphases added); accord New York City Health & Hosps. Corp. v. St. Barnabas Hosp., 782 N.Y.S.2d 12, 14 (App. Div. 2004); Rogers v. Town of Islip, 646 N.Y.S.2d 158, 158 (App. Div. 1996). J&J's claim fails that

standard, for the reasons shown below.  In addition, to the extent that a party resorts to a promissory estoppel claim to avoid the statute of frauds, as J&J appears to do here, the promissory estoppel claim is only viable if it alleges "an unconscionable injury."  North Am. Knitting Mills, Inc. v. International Women's Apparel, Inc., 2000 WL 1290608, at *3 (S.D.N.Y. Sept. 12, 2000); see also Sea Trade Co. v. FleetBoston Fin. Corp., 2004 WL 2029399, at *6 (S.D.N.Y. Sept. 9, 2004) (plaintiff must allege that "the injury [plaintiff] suffered was significant enough that denying [plaintiff] relief would be unconscionable").

The promissory estoppel claim in the Complaint falls short in at least two regards, each of which is an independently sufficient basis for dismissal for failure to state a claim.

### 1.    The Complaint fails to allege a clear and unambiguous promise by the Red Cross to Johnson & Johnson.

For all the interesting history in its Complaint, J&J has not pointed to a single statement by the Red Cross to J&J, much less one that could remotely be construed as an enforceable promise.  It points only to a contract that never took effect because the legislation on which it was contingent was never passed, and to legislative history indicating statements made to persons other than J&J.  As a matter of law, neither of these allegations can amount to a "clear and unambiguous" promise by the Red Cross to J&J.  Count Four should be dismissed on this basis alone.  See, e.g., Suthers v. Amgen Inc., 441 F. Supp.2d 478, 486 (S.D.N.Y. 2006) (dismissing promissory estoppel claim for failure to identify a clear and unambiguous promise made by the defendant to the plaintiffs); Zikakis v. Staubach Retail Servs., Inc., 2005 WL 2347852, at *6 (S.D.N.Y. Sept. 26, 2005) (same).

**Barton Agreement.**  The only "promise" that J&J alleges Red Cross made to J&J is in the Barton Agreement, a contract signed in 1895 but that never took effect.  Compl. ¶ 112.  The Complaint acknowledges as much.  J&J admits that the Agreement was explicitly premised on a

10

bill then-pending before Congress becoming law—which never happened.  Compl. ¶ 46

(agreement only took effect if the pending law was enacted), ¶ 47 (the bill "never became law");

see also Compl. Ex. B at 2 (agreement is premised on "if the [pending bill] shall become a statute,

de facto, of the United States"); id. at 3 (agreement only takes effect "provided always that the

said Protection Bill passes the Fifty-third Congress and becomes a law"; agreement is "if the said

bill shall be passed by both Houses of the Fifty-third Congress and become a defacto statute of

the United States").  And as J&J also concedes, the story did not end with the death of the then-

pending legislation.  In 1905, Congress amended the Red Cross Charter in a way that prohibited

use of the red cross mark by anyone other than the Red Cross, but Congress also grandfathered

then-existing uses of the mark including J&J's.  Compl. ¶ 50.  Thus, the whole reason for the

Barton Agreement, to protect J&J's use of the mark, disappeared.  In any event, having expressly

agreed that the Agreement would take effect only upon enactment of certain legislation that was

never enacted, J&J cannot now rely on the Agreement as if it contained no such condition.

**Congressional Testimony.**  J&J also fails to find a promise by the Red Cross to J&J in

the 1919 and 1942 Congressional hearings it cites.  See Compl. ¶¶ 61-62, 63-64, 68, 113.  To

begin with, none of these allegations involve a clear and unambiguous promise regarding the

Red Cross's future activities; at most, they are all statements made about present or past

activities.  Significantly, J&J's own statements to Congress made clear that the Red Cross was in

fact selling items including first aid kits to the public at the time, id. ¶ 69, and J&J concedes that

Congress took no action to preclude such sales.  Id. ¶ 70.  But even more importantly, none of

the statements J&J cites involved any promise made to anyone, and certainly not to J&J.

For example, J&J seems to find a promise by the Red Cross that it would never sell first-

aid kits in the statement in 1919 by a representative of the Red Cross that "the Red Cross does

not manufacture any merchandise of any kind, and is not engaged in commercial business of any character." <u>See</u> Compl. ¶ 61.  Similarly, J&J seems to find a promise to J&J in testimony to Congress by a Red Cross representative that "we do not use [the Red Cross] for commercial purposes and we do not go into commercial enterprises at all." <u>Id.</u> ¶ 65.  A full understanding of these statements requires more extensive discussion of the issues then before Congress.  <u>See</u> Red Cross Answer and Counterclaims ¶¶ 32-61.  The snippets quoted by J&J were made during hearings when the Red Cross's practice of selling first-aid kits was discussed by the Red Cross and by J&J.  <u>Id.</u> ¶¶ 56-60.  But even taking snippets from Congressional hearings out of context, as J&J does, none of the cited statements were made to J&J, and none contain any promise of future action.

A promissory estoppel claim requires a promise, and only a promisee can sue.  <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295, 301 (2d Cir. 1996) (promissory estoppel claim properly dismissed where plaintiff had not identified a promise made by defendant).  J&J fails on both.

### 2.    The Complaint fails to allege any unconscionable injury.

As shown above, J&J has cited no instance in either 1919 or 1942 in which the Red Cross made any promise to J&J that it would never sell to the public items like the first-aid kits that everyone including J&J knew it sold at the time.  Even if J&J had pointed to such a promise, however, its enforcement would be barred by the Statute of Frauds.  Under New York law, a promise that will not be performed within one year of its making must be in writing and signed to be enforceable.  <u>See</u> McKinney's General Obligations Law § 5-701.  A promise "never" to sell first-aid kits or other items would have been a promise that could not be fully performed within one year, and would therefore be unenforceable under New York's Statute of Frauds.

New York law imposes strict limits on plaintiffs seeking to use promissory estoppel claims to circumvent the Statute of Frauds. A plaintiff claiming promissory estoppel based on a "promise" (nonexistent here) that would otherwise be unenforceable must allege unconscionability and "injury resulting from its reliance 'to such an extent and so substantial in quality as to irremediably alter his situation.' " Sterling Interiors Group., Inc. v. Haworth, 1996 WL 426379, at *21 (S.D.N.Y. 1996) (quoting Philo Smith & Co. v. Uslife Corp., 554 F.2d 34, 36 (2d Cir. 1977); Long v. Marubeni Am. Corp., 2006 WL 1716878, at *2 n.2 (S.D.N.Y. June 20, 2006) ("Unconscionability is a required element, for example, where promissory estoppel is asserted to contravene the effect of the Statute of Frauds."). And in addition, the actions taken "in reliance must have been 'unequivocally referable' to the alleged promise; stated another way, they must have unintelligible, or at least extraordinary, explainable only with reference to the oral agreement.' " Sterling, 1996 WL 426379, at *21 (quoting Anostorio v. Vicinanzo, 463 N.Y.S.2d 409, 410 (N.Y. 1983).[2]

J&J has not remotely met this standard. First, J&J has not and cannot claim that it suffered any loss that was "unequivocally referable" to a promise by the Red Cross. It has alleged no promise in the first place, and even with respect to the statements J&J does cite, J&J

---

[2]      For example, as a New York appellate court aptly explained and is applicable to the allegations in J&J's complaint as well:

> The alleged oral agreement, under which defendants were to pay plaintiff a royalty during his lifetime, and then pay it to his heirs in perpetuity, was correctly held to be unenforceable under the Statute of Frauds as incapable of performance within one year or of complete performance before the end of plaintiff's lifetime (General Obligations Law § 5-701[a][1]). Plaintiff's claim of promissory estoppel does not allow plaintiff to circumvent the Statute of Frauds since there is neither allegation nor proof of the infliction of unconscionable injury on plaintiff as a result of any reliance he placed on defendant's alleged promises.

Melwani v. Jain, 722 N.Y.S.2d 145, 146 (App. Div. 2001) (internal citations omitted).

has utterly failed to allege any connection between them and the unspecified harm it claims to

have suffered.  And second, J&J has not alleged and cannot plead unconscionable injury.

Unconscionable injury is more than "[a]n injury that flows naturally from the defendant's

nonperformance of an unenforceable oral agreement"; it is more than "the loss of future benefits"

or the "loss of a business or other economic opportunity" because these are "typical

consequence[s]" of nonperformance of a promise.  Sea Trade, 2004 WL 2029399, at *6.  As the

court pointed out in Sea Trade,

> Were the doctrine of promissory estoppel involved whenever a party lost out on
> perspective profits, the statute of frauds would be rendered essentially meaningless.  That
> the plaintiff lost out on prospective earnings because defendant decided not to honor the
> agreement may be unfair, it is not however unconscionable.

Id.  (dismissing promissory estoppel claim pursuant to Rule 12(b)(6)); accord

North Am. Knitting, 2000 WL 1290608, at *3 (dismissing promissory estoppel claim for failure

to allege an unconscionable injury, i.e., "an injury 'beyond that which flows naturally from the

mere non-performance of an unenforceable agreement' ") (quoting Merex A.G. v. Fairchild

Weston Sys., 29 F.3d 821, 826 (2d Cir. 1994); Sterling Interiors Group, 1996 WL 426379, at *21

(dismissing promissory estoppel claim for failure to allege an injury "that is even arguably

unconscionable").

   The only injury J&J has alleged relates to unspecified loss of sales and loss of market

share in first-aid and health-care related products.  Compl. ¶ 95.  Courts have consistently held

that such financial injuries are not unconscionable and naturally flow from the nonperformance

of an unenforceable agreement.  See, e.g., Marvin Inc. v. Albstein, 386 F. Supp. 2d 247,

254 (S.D.N.Y. 2005); Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316, 325-

326 (S.D.N.Y. 2001); WE Transport, Inc. v. Suffolk Transp. Serv., Inc., 596 N.Y.S.2d 166,

167 (App. Div. 1993).  When, as here, "even if all of plaintiff's allegations were taken to be true,

they would not rise to the level of reliance and unconscionability" then a "motion to dismiss the promissory estoppel claim should [be] granted." Steele v. Delverde S.R.L., 662 N.Y.S.2d 30, 31 (App. Div. 1997).

**D.      Count Seven Fails to State a Claim against First Aid Only.**

Based on the clear language of the agreement J&J cites, Count Seven fails to state a breach of contract claim against First Aid Only.  The contract allegedly breached is the Settlement Agreement attached as Exhibit D to the Complaint, which states that it is governed by New Jersey law.[3]  Under New Jersey law, to state a claim for breach of contract a party must allege:  "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002); accord Sun Chem. Corp., 2005 WL 39681, at *4.

The Complaint fails to allege that First Aid Only breached any obligation it had under the Settlement Agreement.  J&J alleges that the Settlement Agreement arose out of a dispute over First Aid Only's trademark application Serial No. 76/394,583, and specifically J&J's allegation that use of First Aid Only's mark could result in a likelihood of confusion, mistake, or deception if used in red or orange or in white on a red or orange background.  Compl. Ex. D at Recitals B, C.  Therefore, in the Agreement, the parties stated that First Aid Only would "not use the design feature of the mark identified in Serial No. 76/394,583 in whole or in part in the color red or orange, or in white on a red or orange background, or colorable imitations thereof, in connection

---

[3]      "It is firmly established under New York law, that where a case involves a contract with a clear choice-of-law provision, '[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.' " Sun Chem. Corp. v. Excelsior Packaging Group, Inc., 2005 WL 39681, at *4 (S.D.N.Y. Jan. 10, 2005) (quoting Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000), aff'd, 158 Fed. Appx. 298 (2d Cir. 2005).

with the goods identified in said application." Id. at Undertakings 1 (emphasis added). Thus, the

contract was quite clear: First Aid Only's obligations extend only to use of the design feature of

the First Aid Only mark in the relevant application on the goods identified in the application.

The Complaint alleges that First Aid Only is using the design from the relevant

application because it is placing "the Red Cross Emblem on a variety of FAO goods." But that

fails for two reasons: (1) First Aid Only is not alleged to have used the red cross in its mark,

and no provision of the settlement agreement has anything to do with First Aid Only's partnering

with the Red Cross or with the resulting use of the Red Cross Emblem, taking that allegation

outside the scope of any possible breach. And (2) J&J makes no allegation that any of the

"variety of FAO goods" at issue in First Aid Only's partnership with the Red Cross are "the

goods specified in application 76/394,583"—the only goods on which First Aid Only is

contractually bound not to use that mark. As a result, there is no allegation of any breach of

Settlement Agreement by First Aid Only.[4]

### E.     Count Eight Fails to State a Claim against Water-Jel.

For much the same reason, Count Eight fails to state a breach of contract claim against

Water-Jel. The contract allegedly breached, Exhibit C to the Complaint, states that it is governed

by New York law. Under New York law, to state a claim for breach of contract, a plaintiff must

sufficiently allege: "(1) the existence of a contract; (2) performance of its obligations; (3) [the

defendant's] failure to perform its obligations; and (4) damages as a result of [the defendant's]

---

[4]      In addition, Count Seven falls short of stating a claim because it does not state that J&J
complied with its obligations under the Settlement Agreement—a required element of stating a
valid breach of contract claim under New Jersey law. This is an independent basis for
dismissing Count Seven. See, e.g., Zinn v. Seruga, 2006 WL 2135811, at *9 (D.N.J. July 28,
2006) (dismissing breach of contract claim for failure to allege that plaintiff "has performed his
own contractual duties under the Settlement Agreement" in addition to failing to explain how the
"[defendant's] conduct breached any provision of the Settlement Agreement").

failure." Highland Holdings & Zito I, LP v. Century/ML Cable Venture, 2007 WL 2405689, at

*3 (S.D.N.Y. Aug. 24, 2007) (dismissing breach of contract claim for failure to state a claim).

Count Eight fails to allege a failure by Water-Jel to perform its obligations under the

contract for the same reasons Count Seven failed against First Aid Only – wrong mark and

wrong products. The Water-Jel settlement agreement involved Water-Jel's use of its own

trademark on burn products. See Compl. Ex. C at Recital B, Compl. ¶ 83. The allegations

against Water-Jel in the Complaint are that it partnered with the Red Cross, which placed the

Red Cross Emblem on Water-Jel's hand sanitation products. See Compl. ¶ 88.

Water-Jel's obligation under the contract was to "not use a Greek Cross feature of its

marks in red or in white on a red background." Compl. Ex. C at Undertaking 1 (emphasis

added). There is no allegation in the Complaint that Water-Jel has used the Greek Cross feature

of its own trademark in red or in white on a red background. The settlement agreement simply

imposes no obligations on Water-Jel regarding potential partnership with the Red Cross or with

respect to using the Red Cross's Emblem. And the burn products at issue in the Settlement

Agreement are obviously not the same as the hand sanitation products involved in Water-Jel's

work with the Red Cross. For these reasons, J&J has failed to allege any failure to perform on

Water-Jel's part, and the breach of contract claim should therefore be dismissed pursuant to Rule

12(b)(6). See Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)

(dismissing breach of contract claim for failure to identify specific provision that was breached);

Lewis Tree Serv., Inc., v. Lucent Techs., Inc., 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000)

(dismissing breach of contract claim because plaintiffs failed to identify contractual provisions

that defendant had breached); Shah v. Wilco Sys., Inc., 126 F. Supp. 2d 641, 653 (S.D.N.Y. 2000)

(same).

**F.    Count Two Is Premised Solely On Counts Seven And Eight And Must Be Dismissed Once Those Counts Are Dismissed.**

Counts Seven and Eight must be dismissed because J&J has alleged no breach of the subject settlement agreements.  As a result, Count Two against the Red Cross should also be dismissed because its sole allegation is that the Red Cross induced Defendants Water Jel and First Aid Only to breach their settlement agreements with J&J.  Compl. ¶¶ 102-104.  If the Court dismisses those breach of contract claims for failure to allege a breach, it logically follows that the interference with contract claim in Count Two must be dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and Counts One, Two, Four, Seven, and Eight should be dismissed with prejudice.


Dated:  September 20, 2007                    Respectfully submitted,

                                              HOGAN & HARTSON, L.L.P.

                                              By:       s/Jonathan L. Abram
                                              Jonathan L. Abram (admitted pro hac vice)
                                              Raymond A. Kurz (admitted pro hac vice)
                                              555 Thirteenth Street, N.W.
                                              Washington, D.C. 20004
                                              Tel:  (202) 637-5681
                                              Fax:  (202) 637-5910

                                              Counsel for Defendants


18

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on the 20th day of

September, 2007, I caused a true and correct copy of the foregoing to be served upon the

following via the Court's ECF Notification System:

Gregory L. Diskant
Sarah Elizabeth Zgliniec
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2710
Fax: (212) 336-2222
Email: gldiskant@pbwt.com
Email: sezgliniec@pbwt.com

Richard Zachary Lehv
Roger L. Zissu
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, NY 10004
(212) 813-5900
Fax: (212)-813-5901
Email: rlehv@frosszelnick.com
Email: rzissu@frosszelnick.com

s/ Jonathan L. Abram
Jonathan L. Abram