Jonathan L. Abram
Raymond A. Kurz
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel:  (202) 637-5681
Fax:  (202) 637-5910

Attorneys for Defendants

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE AMERICAN RED CROSS, LEARNING CURVE INTERNATIONAL, INC., MAGLA PRODUCTS, LLC, WATER-JEL TECHNOLOGIES, INC., and FIRST AID ONLY, INC., <br><br> Defendants. | Case No. 07-CV-7061 (JSR/DCF) <br><br> **ECF CASE <br> ELECTRONICALLY FILED** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................2

    A. Count One Fails to State a Claim for Tortious Interference with Prospective Economic Advantage ..........................................................2

    B. Count Four Fails to State a Claim for Promissory Estoppel...................4

    C. Counts Seven and Eight Fail to Allege Any Breach of the Contracts ................................................................................................8

        1. First Aid Only Settlement Agreement ...........................................8

        2. Water-Jel's Settlement Agreement ................................................9

        3. Count Two Relies on Counts Seven and Eight..........................10

CONCLUSION.................................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**CASES:**

Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.,
    707 N.Y.S.2d 647 (App. Div. 2000) ................................................................................6

Arts4All Ltd. v. Hancock, 810 N.Y.S.2d 15 (App. Div. 2006) ...................................................6, 7

Baker v. Guardian Life Ins. Co. of Am., 785 N.Y.S.2d 437
    (App. Div. 2004) ..............................................................................................................2

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................2, 3

Bristol-Myers Squibb Co. v. IVAX Corp., 77 F. Supp. 2d 606
    (D.N.J. 2000) ....................................................................................................................6

British Int'l. Ins. Co. Ltd. v. Seguros LA Republica, S.A.,
    342 F.3d 78 (2d Cir. 2003) ...............................................................................................8

Business Networks of N. Y., Inc. v. Complete Network
    Solutions Inc., 696 N.Y.S.2d 433 (App. Div. 1999) ........................................................2

California Motor Transport Co. v. Trucking Unlimited,
    404 U.S. 508 (1972) .........................................................................................................6

Concourse Nursing Home v. Engelstein, 717 N.Y.S.2d 154
    (App. Div. 2000) ..............................................................................................................6

Conley v. Gibson, 355 U.S. 41 (1957) ...........................................................................................3

Consolidated Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc.,
    2006 WL 2135805 (D.N.J. July 28, 2006) .......................................................................8

Cruden v. Bank of New York, 957 F.2d 961 (2d Cir. 1992) ..........................................................8

Dulien Steel Prods., Inc. v. Bankers Trust Co., 298 F.2d 836
    (2d Cir. 1962) ...................................................................................................................5

Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,
    365 U.S. 127 (1961) .........................................................................................................6

Essex Ins. Co. v. Pingley, 839 N.Y.S.2d 208 (App. Div. 2007) ....................................................9

Federal Trade Comm'n v. A.P.W. Paper Co., 328 U.S. 193 (1946) .........................................1, 4

Fine v. Dudley D. Doernberg & Co. 610 N.Y.S.2d 566 (App. Div. 1994) ...................................3

## TABLE OF AUTHORITIES—Continued

**Page**

Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477
    (S.D.N.Y. 1997) ............................................................................................................4

Four Finger Art Factory, Inc. v. Dinicola, 2000 WL 145466
    (S.D.N.Y. Feb. 9, 2000) ................................................................................................2

G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762 (2d Cir. 1995) ................................4

Gianni Versace, S.p.A. v. Versace, 2003 WL 470340
    (S.D.N.Y. Feb. 25, 2003) ..........................................................................................2, 4

I.G. Second Generation Partners, L.P. v. Duane Reade, 793 N.Y.S.2d 379
    (App. Div. 2005) ..........................................................................................................7

Korn v. Princz, 641 N.Y.S.2d 283 (App. Div. 1996) .......................................................2

Minnesota Mining & Mfg. Co. v. Graham-Field, Inc., 1997 WL 166497
    (S.D.N.Y. Apr. 9, 1997) ............................................................................................2-3

Nester v. O'Donnell, 693 A.2d 1214 (N. J. Super. Ct. App. Div. 1997) .........................9

O'Brien v. National Prop. Analysts Partners, 719 F. Supp. 222
    (S.D.N.Y. 1989) ...........................................................................................................3

PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249
    (S.D.N.Y. 2006) ...........................................................................................................3

Quirk v. American Mgmt. Sys., Inc., 2002 WL 31654966
    (S.D.N.Y. Nov. 22, 2002) ............................................................................................5

Schoettle v. Taylor, 723 N.Y.S.2d 665 (App. Div. 2001) ................................................2

Schor v. FMS Fin. Corp., 814 A.2d 1108 (N. J. Super. Ct. App. Div. 2002) ..................9

SLM, Inc. v. Shelbud Prods. Corp., 1993 WL 127969
    (S.D.N.Y. Apr. 20, 1993) .............................................................................................3

Southwick Clothing LLC v. GFT (USA) Corp., 2004 WL 2914093
    (S.D.N.Y. Dec. 15, 2004) ............................................................................................3

Stroll v. Epstein, 818 F. Supp. 640 (S.D.N.Y.), aff'd, 9 F.3d 1537
    (2d Cir. 1993) ...............................................................................................................9

Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.,
    2006 WL 3393259 (N. Y. Sup. Ct. 2006) ...................................................................3

# TABLE OF AUTHORITIES—Continued

**Page**

United Mine Workers of America v. Pennington, 381 U.S. 657 (1965) ........................................6

Vigoda v. DCA Productions Plus Inc., 741 N.Y.S.2d 20 (App. Div. 2002)..............................2, 4

Wang v. Pataki, 396 F. Supp. 2d 446 (S.D.N.Y. 2005) ................................................................7

Winner Int'l v. Kryptonite Corp., 1996 WL 84476
    (S.D.N.Y. Feb. 27, 1996) ........................................................................................................3

Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275
    (S.D.N.Y. 2004) ......................................................................................................................4

**STATUTE:**

18 U.S.C. § 706..........................................................................................................................1, 4, 7

**RULES:**

Fed. R. Civ. P. 9(b) ........................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

**LEGISLATIVE MATERIAL:**

Red Cross: Hearings Before the Sen. Subcomm. on the Judiciary, 77th
    Cong., 2d Sess. (1942) ............................................................................................................7

**OTHER AUTHORITY:**

N.Y. Jur. Contracts 2d § 26............................................................................................................9

I.      INTRODUCTION

J&J's theory of this case is premised on the notion that it was forced to sue the American Red Cross to stop the Red Cross from what J&J claims is a "dramatic reversal" and "depart[ure]" from historical practice—the Red Cross's use of its red cross Emblem in selling first-aid, disaster-preparedness, and other health and safety products to the American public.  Opposition ("Opp.") at 1.  J&J's own complaint makes clear that this fundamental premise is just false.  The Red Cross has used the Red Cross Emblem for over a century in making health and safety products available for sale to the public, in furtherance of the Red Cross's mission.  That is evident from the congressional testimony J&J relies on for its claim of promissory estoppel—testimony dating from World War II, in which both Red Cross and J&J witnesses acknowledged that the Red Cross was selling products including first aid kits to the American public not only then, but also as long ago as 1914.  It is evident from the language of the 1905 and 1910 Red Cross charters on which J&J relies, which prohibited anyone from using the red cross mark "for the purposes of trade or as an advertisement to induce the sale of any article whatsoever," but specifically exempted the Red Cross and its agents and employees from this prohibition.  And it is evident from the criminal statute on which J&J attempts to rely, 18 U.S.C. § 706, which was adopted for the very purpose of "protecting the Red Cross against pretenders."  Federal Trade Comm'n v. A.P.W. Paper Co., 328 U.S. 193, 201 (1946) (emphasis added).

The fact is that decades ago, J&J tried to persuade Congress to stop the Red Cross from selling first aid kits or other products to the American public.  Congress declined to do so.  Now, over sixty years later, J&J is asking this Court to override that decision.  Several of J&J's claims are defective for other reasons as well.  Counts One, Two, Four, Seven, and Eight fail to state a claim and should be dismissed  pursuant to Rule 12(b)(6).

## II.     ARGUMENT

### A.     Count One Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.

J&J's vague allegations underlying Count One are not enough to state a claim for tortious interference with prospective economic advantage. Under Bell Atlantic Corp. v. Twombly, notice pleading requires more than a simple recitation of the four elements. See 127 S. Ct. 1955, 1964-65 (2007) (surviving a motion to dismiss "requires more than labels and conclusions"). In Twombley, the Supreme Court specifically held that "a formulaic recitation of the elements of a cause of action will not do." Id. Rather, the allegations in the Complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief,' " and must cross over the line from "possibility" to "plausibility." Id. at 1966 (alternation in original, citation omitted).

New York courts have repeatedly recognized that to cross into the realm of plausibility, a claim for tortious interference with prospective economic advantage must identify a specific business relationship that is at issue. See, e.g., Korn v. Princz, 641 N.Y.S.2d 283, 283 (App. Div. 1996) (no claim stated where "there is no allegation that plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship as a result of defendants' conduct") (internal citations omitted); see also Baker v. Guardian Life Ins. Co. of Am., 785 N.Y.S.2d 437, 439 (App. Div. 2004) (dismissing claim for failure to identify specific business relationship); Vigoda v. DCA Productions Plus Inc., 741 N.Y.S.2d 20, 23 (App. Div. 2002) (same); Schoettle v. Taylor, 723 N.Y.S.2d 665, 666 (App. Div. 2001) (same); Business Networks of N.Y., Inc. v. Complete Network Solutions Inc., 696 N.Y.S.2d 433, 435 (App. Div. 1999) (same).[1] This Court too has recognized that this tort is "a difficult one to sustain," given

---

[1]     The cases on this point are legion. See, e.g., Gianni Versace, S.p.A. v. Versace, 2003 WL 470340, at *2 (S.D.N.Y. Feb. 25, 2003); Four Finger Art Factory, Inc. v. Dinicola, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000); Minnesota Mining & Mfg. Co. v. Graham-Field, Inc.,

the " 'more demanding' " standard that New York courts apply in analyzing whether the allegations state a claim. PKG Group, LLC v. Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 241 (S.D.N.Y. 2006) (citing New York caselaw).[2]

J&J's opposition does not cite a single case from a New York court holding to the contrary. J&J instead attempts to rely on a few federal cases not mandating that the plaintiff identify a specific business relationship to state a claim—but those cases are of questionable, if any, relevance given their explicit reliance on the now-abrogated "beyond a doubt" standard from Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Twombly, 127 S. Ct. 1955. See, e.g., SLM, Inc. v. Shelbud Prods. Corp., 1993 WL 127969, at *4-*5 (S.D.N.Y. Apr. 20, 1993) (quoting Conley). To cross into the plausibility realm that Twombly demands, an allegation of a specific business relationship is required, as New York courts have regularly held in dismissing claims. The laundry list of allegations to which J&J points, Opp. 7, is most notable for its failure to mention a single specific business relationship.[3]

J&J fares no better in pointing to allegations that satisfy the second, third, or fourth elements of this tort. As to the second, J&J has pointed to no allegation that the Red Cross "direct[ed] some activities toward the third party and convince[d] the third party not to enter into

---

1997 WL 166497, at *7 (S.D.N.Y. Apr. 9, 1997); Winner Int'l v. Kryptonite Corp., 1996 WL 84476, at *4 (S.D.N.Y. Feb. 27, 1996).

[2] J&J's claim that this Court rejected a "demanding" standard in PKG Group, Opp. 4-5 (citing 446 F. Supp. 2d at 251 & 252 n.1), is simply incorrect. The Court specifically stated that New York law requires a "more demanding" standard, while explaining in a footnote that Rule 9(b)'s fraud pleading standard was inapplicable since there was no allegation of fraud.

[3] J&J instead attempts to introduce specific business relationships in its opposition brief. Id. at 8. This is improper. New facts, alleged for the first time in an opposition brief, are irrelevant in ruling on a motion to dismiss. See Southwick Clothing LLC v. GFT (USA) Corp., 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004); O'Brien v. National Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). In any event, the mere mention of four retailers' names—the only facts the Opposition purports to introduce—without any details about, for example, what the business relationship was, and is, and how it has been interfered with, would still be insufficient to state a claim.

3

a business relationship with the plaintiff." Gianni Versace, 2003 WL 470340, at *2.  Without an allegation that a specific third party was convinced not to enter a business relationship with J&J, Count One fails to state a claim.  See, e.g., G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 768 (2d Cir. 1995); Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 280 (S.D.N.Y. 2004).  J&J cites no case to the contrary.

On the third element, J&J concedes that it makes no allegation that Defendants acted for the sole purpose of harming J&J.  Opp. at 10-11.  Instead, it contends that the Red Cross engages in "criminal conduct" when it works with other companies, like the other Defendants, to jointly offer first aid kits and other disaster preparedness materials to the public.  Id.  That contention is wrong as a matter of law.  The statute that J&J looks to, 18 U.S.C. § 706, was part of the Red Cross's charter for nearly 50 years and was specifically designed to protect the Red Cross's use of the Emblem against "pretenders" and "false impression[s]" that a product is sponsored by the Red Cross.  A.P.W. Paper Co., 328 U.S. at 201.  The goods at issue here are indisputably sponsored by the Red Cross, and J&J has offered no basis for its claim that a crime is afoot when the Red Cross works with other companies to provide these products to the public.[4]

### B.    Count Four Fails to State a Claim for Promissory Estoppel.

J&J's opposition confirms that it can point to no promise by the Red Cross never to sell first aid, preparedness, or other products to the public, much less a promise to J&J.  First, although J&J makes much of the 1895 Barton Agreement in its complaint, Compl. ¶¶ 41-47, J&J's opposition concedes that the Barton Agreement never came into effect and cannot form the basis for its promissory estoppel claim.  Opp. 16 n.1.  So it is now clear that J&J relies only on

---

[4]    J&J has also failed to plead the fourth element, but-for causation.  A simple mention of lost sales or lost profit does not amount to proximate cause.  J&J's opposition cannot overcome its failure to plead that it now lacks specific economic relationships that it would have but for Defendants' conduct.  See, e.g., Vigoda, 741 N.Y.S.2d at 23 (dismissing claim for failure to name a specific economic relationship lost because of the defendant's wrongful conduct).

4

statements made to Congress during World War II-era hearings.  Those statements cannot support J&J's claim.  They contain no promise by the Red Cross never to sell products to the public and they were made to Congress.  Indeed, they resulted in a decision by Congress to refuse J&J's request to ban such sales.

  J&J's complaint makes clear that during the cited hearings both Red Cross and J&J witnesses openly discussed the Red Cross's then-existing practice of selling first aid kits to the general public.  See Compl. ¶ 68 (discussion of the Red Cross's sales of first aid kits "consumed attention" at congressional hearings); Compl. ¶ 69 (J&J testimony noting that the Red Cross's sales of first-aid books, kits, and materials had "run into the hundreds of thousands of dollars").  See also Opp. 13.  J&J has pointed to nothing in the record of the hearings amounting to the required clear and unambiguous promise to J&J that the Red Cross would never again make first aid kits or other products available for purchase by the public.  See Dulien Steel Prods., Inc. v. Bankers Trust Co., 298 F.2d 836, 842 (2d Cir. 1962) ("There was no promise and it is therefore impossible to spell out promissory estoppel."); Quirk v. American Mgmt. Sys., Inc., 2002 WL 31654966, at *3 (S.D.N.Y. Nov. 22, 2002) (" 'general assurances' " do not amount to a clear and unambiguous promise that can form the basis of a promissory estoppel claim) (citation omitted).  The Red Cross is not a profit-making enterprise like J&J; it made that clear many times during the hearings, and it has never said otherwise.  But the Red Cross also made clear that it was selling products like first aid kits to further and fund the organization's critical humanitarian work, and it has never promised or even suggested that it is or should be precluded from doing so.

  Moreover, J&J now relies solely on statements made in connection with congressional hearings, yet it cites not a single case supporting the notion that a promissory estoppel claim can be based on statements to Congress made for the purpose of persuading it to take or refrain from

taking legislative action. In the one case we have found where a plaintiff has even attempted such a claim, the court rejected it, applying the settled rule that under the Noerr-Pennington doctrine, lobbying efforts in Congress are protected from state law tort liability. Bristol-Myers Squibb Co. v. IVAX Corp., 77 F. Supp. 2d 606, 616-617 (D.N.J. 2000) (dismissing promissory estoppel claim based on statements made during congressional hearing as barred by Noerr-Pennington).[5] See Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc., 707 N.Y.S.2d 647, 652 (App. Div. 2000) (holding that under Noerr-Pennington, "citizens who petition the government for governmental action favorable to them cannot be prosecuted" based on that petitioning activity under state tort law. Accord Arts4All Ltd. v. Hancock, 810 N.Y.S.2d 15, 16 (App. Div. 2006) (dismissing state tort claim on Noerr-Pennington grounds); Concourse Nursing Home v. Engelstein, 717 N.Y.S.2d 154, 154 (App. Div. 2000) (dismissing interference with contract claim based on petitioning activity).

The sound reasons for this rule are perfectly presented here. In addition to the First Amendment interests underlying the Noerr-Pennington doctrine, allowing J&J to make out a promissory estoppel claim based on the cited legislative testimony would permit it to achieve through state tort law what it failed to persuade Congress to impose through its lobbying efforts—a binding prohibition against the Red Cross selling products to the public. As J&J's complaint makes clear, during the 1942 hearings both J&J and the Red Cross lobbied Congress about the Red Cross's practice of selling products to the public. At the time, Congress was considering legislation that would have prohibited "the American Red Cross, its employees or

---

[5] The Noerr-Pennington doctrine is derived from the Supreme Court's decisions in Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965). This doctrine, rooted in protecting the First Amendment right to petition the government, provides immunity for private efforts to influence government action. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

6

agents" from "us[ing] the Red Cross for purposes of advertisement to induce the sale of any article for profit or for any business or commercial purpose."[6] J&J told Congress in no uncertain terms that without that provision, the statute's language excepting the Red Cross and its "agents and employees" from the existing ban on commercial use of the mark "would appear . . . to permit commercial use by the American Red Cross of the Red Cross symbol in commerce." [7]

Congress chose not to enact the prohibition, and to this day, the statutory ban on commercial use of the mark still contains the express exception J&J pointed to 65 years ago, allowing such use by grandfathered users and the American Red Cross and its agents and employees. See 18 U.S.C. § 706. Thus, through its promissory estoppel claim, J&J is attempting to use state tort law to circumvent Congress's decision not to stop the Red Cross from using the red cross mark in selling products to the public, a decision Congress made with full knowledge that the Red Cross was doing just that. Only Congress can revise the laws it enacts, not this Court and certainly not a private party like J&J relying on state tort law.[8]

For these reasons, Count Four should be dismissed.

---

[6] Red Cross: Hearings Before the Sen. Subcomm. on the Judiciary ("Senate Hearing"), 77th Cong., 2d Sess. at 3 (1942) (excerpt attached). See Compl. ¶¶ 66, 68, 69 (citing testimony from this same hearing). Even if J&J had not relied extensively on the congressional hearings in its complaint, this Court can take judicial notice of the terms of statutes and the content of legislative history materials on a motion to dismiss. See, e.g., Wang v. Pataki, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005).

[7] Senate Hearing at 29 (testimony of J&J witness) (excerpt attached).

[8] Finally, if J&J had pointed to a promise by Red Cross during the hearings never again to sell products to the public, the Statute of Frauds would plainly apply. See Mem. 12-15. J&J's failure to even argue it suffered any unconscionable injury essentially concedes that even assuming J&J had alleged that Red Cross promised J&J "never" to make first aid products available to the public, the Statute of Frauds would bar enforcement of that promise.

7

### C. Counts Seven and Eight Fail to Allege Any Breach of the Contracts.

J&J makes only one attempt to salvage its breach of contract claims and prevent their dismissal. It claims that its contracts are ambiguous. But the language in the contracts is quite clear, and nowhere do they even address, much less restrict, partnering with the Red Cross and using the Red Cross's Emblem. Mem. 15-17. " 'The determination of whether a contract term is ambiguous is a threshold question of law for the court.' " British Int'l. Ins. Co. Ltd. v. Seguros LA Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003) (citation omitted). It is the obligation of the party claiming ambiguity "to show that a word, phrase, or provision 'could suggest more than one meaning.' " Id. (citation omitted). Here, J&J points to no word, phrase, or provision that has more than one meaning. Therefore, the Court should must "give effect to the intention of the parties as expressed in the unequivocal language they have employed." Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992).[9]

#### 1. First Aid Only Settlement Agreement

J&J does not dispute that First Aid Only's obligation under the settlement agreement at issue is to "not use the design feature of the mark identified in Serial No. 76/394,583 in whole or in part in the color red or orange, or in white on a red or orange background, or colorable imitations thereof, in connection with the goods identified in said application." Compl. Ex. D at Undertakings 1. J&J attempts to introduce ambiguity by claiming that the Red Cross's mark is a "colorable imitation" of the mark identified in Serial No. 76/394,583.

First, it is hard to understand how the Red Cross's mark—which has been used by the Red Cross since at least 1881—could possibly be considered an "imitation" of the mark that First Aid Only applied for in 2002. Only a "reasonable alternative interpretation[]" suffices to create

---

[9] New Jersey law applies these same basic principles of contract interpretation. See, e.g., Consolidated Brick & Bldg. Supplies, Inc. v. Alosi Const., Inc., 2006 WL 2135805, at *5 (D.N.J. July 28, 2006).

8

ambiguity. Schor v. FMS Fin. Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002) (citation omitted); see also Nester v. O'Donnell, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997) ("A 'court should not torture the language of [a contract] to create ambiguity.' ") (citation omitted, alteration in original). Second, J&J points only to use of the Red Cross's Emblem as a breach. It has not pointed to any design feature of First Aid Only's mark that violates its agreement. The settlement agreement expressly states that it grew out of J&J's concern over confusion based on "FAO's mark" (Compl. Ex. D at Recital C), and the language in the agreement makes clear that First Aid Only's obligations extend only to limiting use of the design feature of the First Aid Only mark in that application (and imitations of that mark) on the goods identified there. J&J has pointed to no reasonable interpretation of the settlement agreement that remotely suggests the agreement extends beyond First Aid Only's mark to prohibit it from partnering with the Red Cross and using the Red Cross's mark in conjunction with that partnership. As a result, there is no allegation of any breach of the Settlement Agreement by First Aid Only.

### 2.   Water-Jel's Settlement Agreement

For much the same reason, J&J's opposition to dismissing Count Eight also falls short. Like New Jersey law, New York law provides that "[u]nambiguous contractual language is not rendered ambiguous 'simply because the parties urge different interpretations in litigation.' " Stroll v. Epstein, 818 F. Supp. 640, 643 (S.D.N.Y.), aff'd, 9 F.3d 1537 (2d Cir. 1993). And a finding of ambiguity depends on whether the contract language is " 'susceptible of two reasonable interpretations.' " Essex Ins. Co. v. Pingley, 839 N.Y.S.2d 208, 210 (App. Div. 2007); N.Y. Jur. Contracts 2d § 26 (same). J&J has pointed to no ambiguous term that could be interpreted to preclude Water-Jel from using the Red Cross's mark on hand sanitation products.

In settling a dispute about placing Water-Jel's own trademark on its burn products, Water-Jel agreed to "not use a Greek Cross feature <u>of its marks</u> in red or in white on a red background." Compl. Ex. C at Recital B & Undertaking 1 (emphasis added). J&J's assertion that this settlement agreement language extends to preventing Water-Jel from partnering with the Red Cross and placing the Red Cross Emblem on hand sanitation products is simply not a reasonable alternative interpretation. There is no ambiguity on this point, and thus, as a matter of law, there was no breach.

### 3. Count Two Relies on Counts Seven and Eight

The only basis J&J provides for not dismissing Count Two is that it has stated a claim in Counts Seven and Eight. As explained above, there is no contractual ambiguity, and as a matter of law, those contracts have not been breached. If those counts are dismissed, Count Two against the Red Cross should also be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons and the reasons in Defendants' motion to dismiss, Counts One, Two, Four, Seven, and Eight should be dismissed with prejudice.

Dated: October 17, 2007

Respectfully submitted,

HOGAN & HARTSON, L.L.P.

By:       s/Jonathan L. Abram
Jonathan L. Abram (admitted <u>pro hac vice</u>)
Raymond A. Kurz (admitted <u>pro hac vice</u>)
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5681
Fax: (202) 637-5910

Counsel for Defendants

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on the 17th day of October, 2007, I caused a true and correct copy of the foregoing to be served upon the following via the Court's ECF Notification System:

>Gregory L. Diskant
>Sarah Elizabeth Zgliniec
>Patterson, Belknap, Webb & Tyler LLP
>1133 Avenue of the Americas
>New York, NY 10036
>(212) 336-2710
>Fax: (212) 336-2222
>Email: gldiskant@pbwt.com
>Email: sezgliniec@pbwt.com
>
>Richard Zachary Lehv
>Roger L. Zissu
>Fross Zelnick Lehrman & Zissu, P.C.
>866 United Nations Plaza
>New York, NY 10004
>(212) 813-5900
>Fax: (212)-813-5901
>Email: rlehv@frosszelnick.com
>Email: rzissu@frosszelnick.com

                                                                         s/ Jonathan L. Abram
                                                                           Jonathan L. Abram