# RED CROSS

## HEARINGS

BEFORE A

## SUBCOMMITTEE OF THE COMMITTEE ON THE JUDICIARY UNITED STATES SENATE

SEVENTY-SEVENTH CONGRESS

SECOND SESSION

ON

## S. 2441

AND

## H. R. 7420

BILLS TO IMPLEMENT ARTICLE 28 OF THE CONVENTION SIGNED AT GENEVA ON JULY 27, 1929, RELATING TO THE USE OF THE EMBLEM AND NAME OF THE RED CROSS OR THE COAT OF ARMS OF THE SWISS CONFEDERATION FOR COMMERCIAL OR OTHER PURPOSES

DECEMBER 4 AND 8, 1942

(Reintroduced in Seventy-eighth Congress as S. 469 and S. 470)

Printed for the use of the Committee on the Judiciary



33524

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1943

words 'Red Cross' or 'Geneva Cross' or any combination of these words: *Provided, however,* That any person, corporation, or association that actually used or whose assignor actually used the said emblem, sign, insignia, or words for any lawful purpose prior to January 5, 1905, may continue the use thereof for the same purpose and for the same class of goods for a period not exceeding one year after the date of the enactment of this Act. If any person, corporation, or association, or any member, director, officer, agent, representative, or employee thereof, violates the provision of this section he shall be deemed guilty of a misdemeanor, and upon conviction in any Federal court shall be liable to a fine of not more than $5,000, or imprisonment for a term not exceeding one year, or both, for each and every offense."

[H. R. 7420, 77th Cong. 2d sess., Report No. 2387]

A BILL To implement article 28 of the convention signed at Geneva on July 27, 1929, relating to the use of the emblem and name of the Red Cross or the coat of arms of the Swiss Confederation for commercial or other purposes

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 4 of the Act entitled "An Act To Incorporate the American National Red Cross," approved January 5, 1905, as amended (U. S. C., 1940 edition, title 36, sec. 4) is amended to read as follows:

"SEC. 4. That from and after the passage of this Act it shall be unlawful for any person within the jurisdiction of the United States to falsely or fraudulently hold himself out as or represent or pretend himself to be a member of or an agent for the American National Red Cross for the purpose of soliciting, collecting, or receiving money or material; or for any person to wear or display the sign of the Red Cross or any insignia colored in imitation thereof for the fraudulent purpose of inducing the belief that he is a member of or an agent for the American National Red Cross. It shall be unlawful for any person, corporation, or association other than the American National Red Cross and its duly authorized employees and agents and the Army and Navy sanitary and hospital authorities of the United States for the purpose of trade or as an advertisement to induce the sale of any article whatsoever or for any business or charitable purpose to use within the territory of the United States of America and its exterior possessions the emblem of the Greek Red Cross on a white ground, or any sign or insignia constituting an imitation thereof, or the words 'Red Cross' or 'Geneva Cross', or any combination of these words. Any person, corporation, or association, or any member, director, officer, agent, representative, or employee thereof, violating any provision of this section shall be guilty of a misdemeanor, and upon conviction in any Federal court shall be fined not more than $500 or imprisoned for a term not to exceed one year, or both."

SEC. 2. The Act entitled "An Act To prohibit the commercial use of the coat of arms of the Swiss Confederation pursuant to the obligation of the Government of the United States under article 28 of the Red Cross Convention signed at Geneva July 27, 1929", approved June 20, 1936 (U. S. C. 1940 edition, title 22, sec. 248), is amended to read as follows:

"That it shall be unlawful for any person, partnership, incorporated or unincorporated company or association within the jurisdiction of the United States to use, whether as a trade-mark, commercial label, or portion thereof, or as an advertisement or insignia for any business or organization or for any trade or commercial purpose, the coat of arms of the Swiss Confederation, consisting of an upright white cross with equal arms and lines on a red ground, or any sign or insignia constituting an imitation thereof. Any person, corporation, or association, or any member, director, officer, agent, representative, or employee thereof, violating any provision of this section shall be guilty of a misdemeanor, and upon conviction in any Federal court shall be fined not more than $500, or imprisoned for a term not to exceed 1 year, or both."

SEC. 3. Notwithstanding the amendments made by this Act to section 4 of such Act approved January 5, 1905, as amended and to such Act approved June 20, 1936, any person, corporation, or association that actually used or whose assignor actually used the Red Cross for any lawful purpose prior to January 5, 1905, or used the White Cross for any lawful purpose for ten years next preceding June 20, 1936 may continue to use the Red Cross or the White Cross as the case may be—

ided,
vhose
iwful
same
after
ition,
, vio-
anor,
more
, for

1929,
ae of

tates
t To
i, as
ows:
l for
ntly
gent
g, or
f the
pose
ican
isso-
ized
ities
e the
use
ions
gnia
', or
i, or
olat-
upon
oned

it of
nent
d at
22,

acor-
ates
s an
le or
sting
any
i, or
oyee
inor,
0, of

such
20,
gnor
1905,
ding
the

(1) until July 1, 1944, if such use by such person, corporation, or association would have been lawful prior to the date of enactment of this Act; and

(2) during an additional period beginning July 1, 1944, and ending July 1, 1947, in the labeling of any article, (A) if use in the labeling of such article by such person, corporation, or association would have been lawful prior to the date of enactment of this Act; (B) if a new trade name, design, or insignia is used in such labeling; and (C) if such use is only of the words "Red Cross" or "White Cross," as the case may be, and only for the purpose of indicating, in lettering smaller than the new trade name, design, or insignia, that such article formerly was identified by the Red Cross or the White Cross, as the case may be

SEC. 4. For purposes of section 4 of such Act approved January 5, 1905, as amended, and of such Act approved June 20, 1936, the sale, other than to the American National Red Cross and its duly authorized employees and agents and the Army and Navy sanitary and hospital authorities of the United States, of any article in the labeling of which the Red Cross is used, or the sale of any article in the labeling of which the White Cross is used, shall be deemed to be a use of the Red Cross or White Cross, as the case may be, by the vendor of such article; but the resale, prior to July 1, 1947, by a jobber or retail dealer, of any article lawfully sold by the manufacturer or producer thereof prior to July 1, 1944, or, in the case of any article referred to in paragraph (2) of section 3, prior to July 1, 1947, shall not be held to be a violation of section 4 of such Act approved January 5, 1905, as amended by this Act or of such Act approved June 20, 1936, as amended by this Act.

SEC. 5 Neither the provisions of section 4 of such Act approved January 5, 1905, as amended by this Act, nor the provisions of this Act, shall be construed to authorize the American National Red Cross, its employees or agents, or the Army or Navy sanitary or hospital authorities of the United States to use the Red Cross for purposes of advertisement to induce the sale of any article for profit or for any business or commercial purpose.

SEC 6 As used in sections 3, 4, and 5 of this Act, the term—

(a) "Red Cross" means the emblem of the Greek Red Cross on a white ground, or any sign or insignia constituting an imitation thereof, or the words "Red Cross" or "Geneva Cross," or any combination of such words.

(b) "White Cross" means the coat of arms of the Swiss Confederation, consisting of an upright white cross with equal arms and lines on a red ground, or any sign or insignia constituting an imitation thereof

(c) "Labeling" means any written printed, stamped or graphic matter upon an article or any of its containers or wrappers

Senator O'MAHONEY. Those who desire to be heard will please give their names to the reporter.

Miss Boardman, do you wish to be heard?

Miss BOARDMAN. No.

Senator O'MAHONEY. Mr. Davis?

Mr. DAVIS. Mr. Hughes will cover the matter for the Red Cross.

Senator O'MAHONEY. Who else desires to be heard?

Mr. STERN. Joseph S. Stern, representing the United States Shoe Corporation, Cincinnati, Ohio

Mr. FORRESTAL. James T. Forrestal, representing the A. P. W. Paper Co., Albany, N. Y.

Senator O'MAHONEY. Anybody else here desiring to be heard?

(No response.)

Senator O'MAHONEY. Mr. Hughes, would you be good enough to make a statement to the committee with respect to S. 2441 and the proposed substitute bill which I understand has been prepared by parties in interest?

# RED CROSS

TUESDAY, DECEMBER 8, 1942

UNITED STATES SENATE,
SUBCOMMITTEE OF THE COMMITTEE ON THE JUDICIARY,
*Washington, D. C.*

The subcommittee met pursuant to adjournment at 10:30 a. m., in room 224, Senate Office Building, Senator Joseph C. O'Mahoney (acting chairman) presiding.

Present: Senators O'Mahoney (acting chairman) and Hughes (chairman).

Senator O'MAHONEY. The committee will be in order.

Mr. Perry, we will be very glad to have your statement.

## STATEMENT OF KENNETH PERRY, JOHNSON & JOHNSON, NEW BRUNSWICK, N. J.

Mr. PERRY. Thank you, sir.

I would like to make a comment or two on the testimony that was given on Friday, particularly where you asked questions and received answers, where I think that possibly the answers were not either full or correct.

In the testimony of Mr. Hughes, you suggested that the proposed substitute bill, H. R. 7420, had, according to your understanding, been prepared by the parties in interest. That is not according to my understanding. It was not prepared by the parties in interest, the substitute bill, nor were there any hearings held on the substitute bill. The substitute bill was introduced on July 21, 1942, and the hearings were completed on May 27, 1942. There were no hearings on it at all.

Senator O'MAHONEY. It may be said, perhaps, that it was introduced as a result of the hearings.

Mr. PERRY. I cannot say that, Senator. You may be correct, because they were in executive session, and we do not know what took place.

Senator O'MAHONEY. That would probably be more or less immaterial.

Mr. PERRY. With relation to the discussion on the section prohibiting the use of the Red Cross symbol by the American National Red Cross for commercial purposes, there is mentioned by Mr. Hughes the sale of the first-aid books, but no mention of the sale of the first-aid kits and first-aid materials which, according to the record of the House, run into the hundreds of thousands of dollars.

We have no information as to what those sales have been in the year 1941 and 1942, but we do know, from our experience in the field, that it certainly is many times that of 1940 and 1941.

27

Mr. HUGHES. As a matter of fact, Mr. Perry, the sales of first-aid kits were less than 3,600, less than 1 to each chapter in the United States.

I would be very glad to have a sworn statement from our supply department, if that is material.

Mr. PERRY. Do I understand the only place you supplied them was to the departments?

Mr. HUGHES. We supplied them to the departments, Red Cross chapters, or our instructors in the chapters.

Mr. PERRY. How about the first-aid road stations?

Mr. HUGHES. We supply that. That is our own equipment. The chapter buys that and establishes the highway first-aid stations.

Mr. PERRY. They do not pay for that? The first-aid station does not pay for that?

Mr. HUGHES. The chapter pays that out of chapter funds. They supply the stretcher, the sign, the kit, bandages, and things that are needed in the first-aid station.

Mr. PERRY. Has that practice been true all the way through 1940, 1941, and 1942?

Mr. HUGHES. That has been true since the highway first-aid project was launched.

Mr. PERRY. Do you know what the figure is on the sale of first-aid kits?

Mr. HUGHES. I think it has been steadily going down.

Senator O'MAHONEY. I assume the Red Cross does not manufacture these kits.

Mr. HUGHES. No, sir. We buy all of the articles on bids from concerns such as Johnson & Johnson.

Senator O'MAHONEY. You buy them on competitive bidding from private industry?

Mr. HUGHES. We buy them on competitive bidding from private industry.

Senator O'MAHONEY. Then distribute them to your stations?

Mr. HUGHES. Then distribute them to our stations.

Senator O'MAHONEY. Your local chapters compensate you for them?

Mr. HUGHES. Yes, sir; they buy them from the National American Red Cross.

Senator O'MAHONEY. Is that done as a profit-making business?

Mr. HUGHES. No, sir.

Senator O'MAHONEY. Just cost?

Mr. HUGHES. Well, I do not know the exact relation between the sum total of the articles and when you buy them in volume, but if there is a profit made in the transaction between the chapter and the national organization, that is just a bookkeeping matter since all of the chapter funds are the national funds. We ask for bids from the manufacturers of kits.

Senator O'MAHONEY. The kits are not sold to the general public?

Mr. HUGHES. Occasionally a person will go right in and get them. They are sold; there is no complete prohibition against it, but they are not advertised; they are not offered generally for sale to the public. They are not maintained by us as a resale article to the public.

Senator O'MAHONEY. All right.

Mr. PERRY. I have no knowledge, of course, of the present operation, except as Mr. Hughes explains it, but I have here the 1914 and 1915 catalogs. From these catalogs it appears that the kits were advertised for distribution and sale generally to the public; and that the products thus sold commercially under the red-cross symbol were those of our competitor Bauer & Black.

So, I think that it is important that there be some restriction on the commercial use.

Mr. HUGHES. Before 1933 there were more sold?

Mr. PERRY. On the first page, Senator O'Mahoney, you will find the advertising script.

Senator O'MAHONEY. I will tell you, in the interest of expediting this hearing, I am going to suggest that you make your statements of fact and your presentation as you would like to present it, and then if necessary, later on, if you would rather have an argument about the matter, we will have each side present its argument. I think it will be a more orderly procedure, if you please.

Mr. PERRY. All right, sir. I direct attention in these catalogs of 1914–15 to the advertising material on the opening page, inviting the public to buy, and calling attention to the merits and the reasonable price of the product.

I also direct attention to the fact that, while all of the products were sold under the auspices of the American National Red Cross, that the Red Cross insignia appears on the product of our competitor Bauer & Black, whom we restrained in an equity proceeding in the Federal court in 1895 from using the Red Cross.

Senator O'MAHONEY. You do not suggest that that restraining order is being violated—or, do you?

Mr. PERRY. No, sir; I do not suggest that. I suggest that the clause that is inserted in H. R. 7420 placing a restriction on the commercial use of the insignia by the American National Red Cross was well considered and properly inserted by the House Foreign Affairs Committee, for the reasons stated. I also call attention to the fact that the language in H. R. 7420, in section 4 as amended, would appear, except for the prohibition later contained in this act to permit commercial use by the American National Red Cross of the Red Cross symbol in commerce, because the language is to the effect that it shall be unlawful for any persons, firm, and so forth, except the American National Red Cross and its duly authorized employees and agents and the Army and Navy sanitary and hospital authorities of the United States for the purpose of trade, or as an advertisement to induce the sale of any article whatsoever or for any business or charitable purpose to use within the territory of the United States of America—and so forth. The exception would appear to give them permission to use it for commercial purpose.

Mr. Hughes commented upon the fact that there was a great deal of discussion as to why our country had no early act with respect to implementing that provision of the treaty by appropriate legislation in Congress. He stated all of that is very faithfully and very clearly dealt with in a letter from the Secretary of State, that the Secretary of State has written, and which appears in the report of hearings before the House Committee on Foreign Affairs.

83524—43—3