UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE AMERICAN RED CROSS, LEARNING CURVE INTERNATIONAL, INC., MAGLA PRODUCTS, LLC, WATER-JEL TECHNOLOGIES, INC., and FIRST AID ONLY, INC., <br><br> Defendants. | Case No. 07-CV-7061 (JSR/DCF) <br><br> **ECF CASE** <br> **ELECTRONICALLY FILED** |

## DECLARATION OF SCOTT CONNER IN
## SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Scott Conner, being of mature age and having the mental capacity to do so, hereby declare and state as follows:

1. I am employed at the American National Red Cross (the "American Red Cross" or "ARC") as Senior Vice President, Preparedness & Health and Safety Services. The American Red Cross is a federally chartered nonprofit corporation located at 2025 E Street NW, Washington, DC 20006.

2. I submit this Declaration in support of Defendants' Motion for Summary Judgment based on my personal knowledge from working at the American Red Cross and other factual matters known to me.

3. The Red Cross Emblem appears on millions of Christmas Seals and fundraising items distributed or used by American Red Cross employees, chapters, and authorized volunteers and fundraising partners in the course of their daily efforts to support the organization's humanitarian mission. In certain circumstances, the American Red Cross also permits use of the Emblem in a "cause marketing" context. A firm that makes a particular good or service that is compatible with the American Red Cross's mission might agree to make a contribution to the American Red Cross, sometimes on a per-unit sold basis, and to include in its packaging Red Cross information on first aid or emergency preparedness or some other subject important to the American public and within our mission. Subject to our controls, the Emblem would then be displayed with our authorization on the firm's packaging or marketing materials, often on retail store shelves, to communicate to consumers that a portion of the proceeds of purchases will be donated to the American Red Cross.

4. Sales of the first aid kits and other products at issue in this lawsuit further ARC's mission and purpose in two clear ways: (1) these products promote preparedness for medical and other emergencies, disasters, and needs, and (2) arranging for their manufacture, distribution, and sale provides funding needed to further our humanitarian efforts. The sales at issue in this lawsuit are no different in this respect than sales we have been engaged in for decades.

5. The American Red Cross has long looked for ways to increase the preparedness of the public by making proper first aid materials and proper first aid training available to as many people as practicable. For decades, we have sold first aid and related items, both directly to the public through the General Supply Department at the National Headquarters (and more recently on the web – please consult www.redcross.org) and also to our chapters for their use or resale to consumers. Our chapters sell first aid, preparedness, and other mission-related items on

their own web sites. And our Kansas City chapter operates a retail facility in a shopping mall at which important health, safety, and preparedness items are sold, bearing the Red Cross Emblem. In addition, a first aid kit was developed by our Seattle Chapter and manufactured by First Aid Only, and a first aid kit was developed by the Cincinnati Chapter. Both were available to the public and to all chapters to purchase for resale.

6. The Emblem is used in a wide variety of other ways by the American Red Cross and authorized third parties, often in settings that would be described as "commercial activities" as that phrase has been used in this litigation. For example, the Red Cross Emblem is front and center on all the materials and textbooks and other items provided to the millions of Americans who have taken an American Red Cross class in first aid, water safety, family and babysitter health care, CPR, and myriad other health and safety-related trainings. The American Red Cross typically charges a price or fee for CPR, first aid and babysitting training and materials (consistent with ARC's health and safety mission), as well as for swimming lessons (such classes were offered in response to an outbreak of drownings in the early Twentieth Century). Millions of course participants have received a badge displaying the Red Cross Emblem to signify their accomplishment in passing a Red Cross training course. All of these activities of the ARC and uses of the Red Cross Emblem further the important work of the ARC.

7. ARC does not itself own any manufacturing or publishing facilities. This means that it must regularly permit third-party firms to use the Emblem in conjunction with manufacturing or publishing material for ARC's use and sale. Almost all of the supplies we provide during emergencies and in preparation for them are manufactured by third parties, who place the Emblem on boxes and items so that victims and consumers will know we are the source of the water or blanket or food item they are being given.

8. ARC exercises strict controls when we authorize any third party to use the Red Cross name and Emblem. That is true with respect to the firms that manufacture blood bags or field boxes or water bottles or any of a myriad items we have to have every year to do our work. And it is true of the firms who manufacture and distribute first aid and other products for us. We control the nature of the product and the exact way in which the Emblem will be used, to assure the Emblem is not used in conjunction with products or services that are not authorized by us and part of our mission. We could not do our work if we were unable to authorize volunteers and other third parties to use our name and Emblem in appropriate circumstances.

9. ARC would be severely prejudiced if for some reason it were required to stop putting its Emblem on products or other items because the Emblem is so closely associated with the American Red Cross. For over 100 years, the American public has seen the American Red Cross Emblem on products and in contexts that has imparted to the Emblem, including the American Red Cross name, a message of safety and emergency response and care that we work hard every day to maintain. The Emblem must of necessity be used widely by persons not directly employed by the American Red Cross, from volunteers to manufacturers to fundraising partners. The American Red Cross strives to assure that all those who are authorized to display the Emblem are screened or trained or subject to supervision or controls appropriate to the circumstance. That is straightforward in the case of cause marketing partners and in the case of manufacturers like the other defendants, since the terms of their use can be pre-defined in a carefully crafted agreement setting forth our right to tightly control the Emblem's use. But the Emblem is also used in situations like Katrina or 9-11 in which great need arises, disorder prevails, and response must be immediate. The American Red Cross could not function without the assistance of the volunteers who staff the shelters and feed or care for those in need or

without the support of firms who work with us to provide the goods and services needed to fulfill our mission.

I declare the foregoing to be true and correct under penalty of perjury. This Declaration is executed by me in Washington, DC this 19 day of November, 2007

_____
Scott Conner