Gregory L. Diskant
Robert W. Lehrburger
Sarah E. Zgliniec
Phyllis S. Wallitt
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

Roger L. Zissu
Richard Z. Lehv
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE AMERICAN NATIONAL RED CROSS, LEARNING CURVE INTERNATIONAL, INC., MAGLA PRODUCTS, LLC, WATER-JEL TECHNOLOGIES, INC., and FIRST AID ONLY, INC., <br><br> Defendants. | Case No. 07-CV-07061 (JSR) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS**

1

In accordance with Local Civil Rule 56.1, Plaintiffs, Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. ("J&J"), submit the following Response to the Defendants' Counter-Statement of Undisputed Material Facts.

## GENERAL OBJECTIONS

1.  J&J objects to Defendants' Counter-Statement in its entirety as inappropriate under Local Civil Rule 56.1(b), which states that the "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and, if necessary, additional paragraphs containing a separate, *short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.*" Defendants have submitted additional allegedly **undisputed** facts to supplement their prior Statement of Undisputed Facts and in response to Plaintiffs' Motion for Summary Judgment, which it cannot do under the Local Rule. For this reason, the Court should strike Defendants' Counter-Statement of Undisputed Facts in its entirety.

2.  J&J incorporates here the contents of Plaintiffs' Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Summary Judgment and the Declarations of Ravi V. Sitwala and Phyllis S. Wallitt Submitting Exhibits and the exhibits annexed thereto.[1]

## RESPONSES

Subject to the General Objections listed above, J&J responds to Defendants' Statement as follows:

### Paragraph 180

None of the National Societies in the Red Cross Movement are bound directly by the Geneva

---

[1] The Declaration of Phyllis S. Wallitt, dated Dec. 5, 2007, is referred to in the responses as the First Wallitt Declaration, and the Declaration of Phyllis S. Wallitt, dated Dec. 12, 2007, is referred to as the Second Wallitt Declaration.

2

1418365v.1

Conventions; instead, each is bound by whatever national legislation its home nation has enacted to implement the Geneva Conventions. Meltzer Decl. ¶ 10.

### Response to Paragraph 180

Disputed. J&J objects to Paragraph 180 as legal argument inappropriate in a Rule 56.1 statement. Furthermore, J&J objects to the use of the Meltzer Declaration to support the statements in Paragraph 180 in that the declaration provides no legal basis or personal knowledge for its assertions. See Meltzer Decl. ¶ 7-11. Undisputed that national societies are "bound by whatever national legislation its home nation has enacted to implement the Geneva Conventions." Through ARC's charter and 18 U.S.C. § 706, Congress has enacted national legislation implementing the sections of the Geneva Conventions concerning national societies – designating ARC as the United States' national society – and governing use of the emblem, subject to a specific reservation protecting grandfathered use of the emblem. See J&J Reply Brief at 15-17; see also 18 U.S.C. § 706 (App. I, Tab 16); 36 U.S.C. § 300101 - 300113 (App. I, Tab 13).

### Paragraph 181

ARC has vigilantly policed private parties' unauthorized uses of the Red Cross Emblem for years through cease and desist letters, because ARC fully embraces the goal expressed in all of the Geneva Conventions that the Emblem be protected from unauthorized uses and from compromising the symbol's integrity. See Second Abram Decl., Ex. 167 (Ortmeier Dep.16-17, 29-30); Second Abram Decl., Ex. 169 (Morisi Dep. 10, 21-24, 29-32).

### Response to Paragraph 181

J&J objects to Paragraph 181, including the statement that ARC has "vigilantly policed" unauthorized uses and that ARC "fully embraces the goal expressed in all of the Geneva Conventions" as unsupported argument inappropriate in a Rule 56.1 statement. Undisputed that ARC has sent cease and desist letters to parties engaging in unauthorized uses of the Red Cross Emblem, but disputed that "ARC fully embraces the goal expressed in all of the

Geneva Conventions that the Emblem be protected from unauthorized uses and from compromising the symbol's integrity." ARC's conduct at issue in this case, as set forth in J&J's Rule 56.1 statement and Statement of Facts in its Memorandum in Support of Summary Judgment, show that ARC does not fully embrace the goal of protecting the Emblem from illegal uses or comprising its integrity.

### Paragraph 182

J&J has proffered an expert in domestic law to testify regarding the License Agreements being customary trademark license agreements. See Exhibit to Abram Decl. in Support of Motion to Strike, Dec. 3, 2007, Docket Entry No. 58 (Expert Report of Kenneth B. Germain). The defendants have moved to strike this expert. See Defendant's Motion to Strike, Dec. 3, 2007, Docket Entry No. 56.

### Response to Paragraph 182

Undisputed that J&J has provided an expert to testify that the license agreements between ARC and its codefendants are customary trademark license agreements. Undisputed that defendants have moved to strike this expert.

### Paragraph 183

J&J admitted that "there's obviously graphically a difference between the red cross mark as a pure red cross and a red cross mark with other matter added to it." First Abram Decl., Ex. 11 (Biribauer Dep. at 70).

### Response to Paragraph 183

Undisputed that deposition testimony of Richard Biribauer is accurately but selectively quoted in Paragraph 183.[2] Disputed to the extent that paragraph 183 suggests a legal conclusion concerning J&J's use of the red cross mark and to the extent that it suggests that Mr. Biribauer testified concerning his legal opinion on J&J's use of the red cross mark. Mr. Biribauer would not testify about his legal opinion or legal advice given to J&J and explicitly

---

[2] Mr. Biribauer's deposition testimony cited by ARC is actually found on page 66, not page 70, of the transcript. See Second Wallitt Decl., Ex. 134 (Biribauer Dep. at 66).

4

1418365v.1

stated that he could "describe the designs" graphically as a layman but was "not going to characterize" them for purposes of trademark law. See Second Wallitt Decl., Ex. 134 (Biribauer Dep. at 66-67). Mr. Biribauer also testified that J&J used a red cross mark with "Johnson & Johnson scripted across it" in the 1800s. Second Wallitt Decl., Ex. 134 (Biribauer Dep. at 65.)

### Paragraph 184

None of J&J's pre-1905 uses of the Emblem show the words "all-purpose" or "first aid" written inside the Emblem. See, e.g., J&J Ex. 7-11.

### Response to Paragraph 184

Undisputed that none of the products listed in Exhibits 7-11 "show the words 'all-purpose' or 'first aid' written inside the Emblem." Disputed as to any inference that these uses convey a different commercial impression from pre-1905 uses. Before 1905, J&J used the Red Cross Emblem in a variety of ways, including on all-purpose first aid kits and the use of words (both Johnson & Johnson and other words) on the packaging in addition to the Red Cross Emblem and words written through the Red Cross Emblem. See, e.g., Sitwala Decl., Ex. 8 at JJARC293 (J&J 1899 Price List); Sitwala Decl., Ex. 9 at JJARC364 (J&J 1902 Price List); Sitwala Decl., Ex 11 at JJARC427-28, 430 (J&J 1904 Physician's List).

### Paragraph 185

J&J purposefully went beyond the first aid and wound care arena into the business of selling emergency preparedness products, which it had not done before 1905. See Second Abram Decl., Ex. 170 (Kotei Dep. at 105); First Abram Decl., Ex. 152 (1904 J&J catalog). J&J saw this new emergency preparedness market developing after 9/11 and Hurricane Katrina. Second Abram Decl., Ex. 171 (Tolonon Dep. 112-113, 148-149).

### Response to Paragraph 185

Disputed. J&J objects to Paragraph 185, in particular the statements that "J&J purposefully went beyond the first aid and wound care arena," as unsupported argument inappropriate in a

Rule 56.1 statement. Disputed that J&J sells "emergency preparedness products" that are beyond "first aid and wound care." J&J sells a first aid kit that is called an Emergency First Aid Kit. See First Abram Decl., Ex. 149 (picture of J&J Emergency First-Aid Kit). Moreover, pre-1905, J&J sold "Emergency Fire Kits," "Factory Accident Cases," and other products intended to be used in emergency situations, as well as general first aid kits. See, e.g., Sitwala Decl., Ex. 11 at JJARC427- 8 (J&J 1904 Physician's List). These products are in the same class of goods as the Emergency First Aid kit presently sold by J&J. J&J also objects to Defendants' citations to Abram Decl., Ex. 170 – deposition testimony of Amlin Kotei, a fact witnesses not testifying on behalf of J&J on this topic – to support their claim that "J&J purposefully went beyond the first aid and wound care arena into the business of selling emergency preparedness products, which it had not done before 1905." Paragraph 185 mischaracterizes the witness's testimony, which was that he personally did not know if J&J sold emergency preparedness products in the past. Mr. Kotei was not asked about, and did not testify to, pre-1905 uses. In any case, this deposition testimony does not represent the corporate knowledge of J&J. Disputed that J&J saw a "new emergency preparedness market" developing to the extent it suggests that J&J's emergency first aid kit is a new or distinct type of product than J&J's other first aid kits. ARC mischaracterizes the testimony of Jeffrey Tolonen, who testified that "post 2005 we saw a massive increase in the entire category of first aid kits, a dramatic increase in sales directly related to Hurricane Katrina, and then people preparing for and after the fact either replenishing supplies and preparing for potentially the next one." See also Second Abram Decl., Ex. 171 (Tolonen Dep. 149) (stating that "emergency preparedness wasn't particularly what we were going after, outside

1418365v.1

of how having any gauze pad or tape on hand in the event of a first aid emergency would be preparing for that first aid need").

### Paragraph 186

J&J admitted that it is not aware of having sold red cross light sticks under the Red Cross Emblem prior to January 5, 1905. See Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 1).

### Response to Paragraph 186

J&J objects to the extent Paragraph 186 mischaracterizes J&J's response to Defendants' Request for Admission No. 1. Undisputed that J&J's response stated: "In addition to J&J's general objections, J&J objects to this Request as particularly vague in that 'light stick' is not defined nor is it clear what it means to 'sell [an item] *under the* J&J Cross Design and/or J&J Cross Design Variants.' Subject to and without waiving these objections, J&J is not aware of sales of individually branded red cross light sticks of the sort shown in Exhibit B to ARC's Answer and Counterclaims prior to January 5, 1905, and otherwise denies the Request." See Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 1) (alteration and emphasis in original).

### Paragraph 187

J&J is currently selling light sticks under the Red Cross Emblem. See Abram Decl., Ex. 170 (Kotei Dep. at 35); First Abram Decl., Ex. 149 (Photograph of J&J Emergency Preparedness Kit).

### Response to Paragraph 187

Disputed. While light sticks are sold in some of J&J's red cross-branded first aid kits, the light stick packaging does not bear the Red Cross Emblem. Disputed that the light stick is sold "under" the Red Cross Emblem. Like many other items in J&J's first aid kits, the light stick does not bear the Red Cross Emblem, is not a J&J Red Cross product and is not sold "under" the Emblem. See Second Wallitt Decl., Ex. 135 (photograph of light stick). J&J

also objects to the cited reference to the "J&J Emergency Preparedness Kit." The kit pictured in the cited exhibit is the Johnson & Johnson Emergency First Aid Kit. See Abram Decl., Ex. 149.

### Paragraph 188

J&J admitted that it is not aware of having sold survival wrap under the Red Cross Emblem before 1905. See Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 4).

### Response to Paragraph 188

J&J objects to the extent Paragraph 188 mischaracterizes J&J's response to Defendants' Request for Admission No. 4. Undisputed that J&J's response stated: "In addition to J&J's general objections, J&J objects to this Request as particularly vague in that 'survival wrap' is not defined nor is it clear what it means to 'sell [an item] *under the* J&J Cross Design and/or J&J Cross Design Variants.' Subject to and without waiving these objections, J&J is not aware of sales of individually branded red cross survival wrap of the sort shown in Exhibit B to ARC's Answer and Counterclaims prior to January 5, 1905, and otherwise denies the Request." See Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 4) (alteration and emphasis in original).

### Paragraph 189

J&J is currently selling survival wrap under the Red Cross Emblem. See Second Abram Decl., Ex. 170 (Kotei Dep. at 35); First Abram Decl., Ex. 149 (Photograph of J&J Emergency Preparedness Kit).

### Response to Paragraph 189

Disputed. While survival wrap is sold in some of J&J's red cross-branded first aid kits, the individual survival wrap packaging does not bear the Red Cross Emblem. Disputed that survival wrap is sold "under" the Red Cross Emblem. Like many other items in J&J's first aid kits, the survival wrap does not bear the Red Cross Emblem, is not a J&J Red Cross

product and is not sold "under" the Emblem. <u>See</u> Second Wallitt Decl., Ex. 136 (photograph of survival wrap). J&J also objects to the cited reference to the "J&J Emergency Preparedness Kit." The kit pictured in the cited exhibit is the Johnson & Johnson Emergency First Aid Kit. <u>See</u> Abram Decl., Ex. 149.

### Paragraph 190

J&J admitted that it is not aware of having sold individually branded red cross latex protective gloves prior to January 5, 1905. <u>See</u> Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 8).

### Response to Paragraph 190

J&J objects to the extent Paragraph 190 mischaracterizes J&J's response to Defendants' Request for Admission No. 8. Undisputed that J&J's response stated: "In addition to J&J's general objections, J&J objects to this Request as particularly vague in that it is not clear what it means to 'sell [an item] *under the* J&J Cross Design and/or J&J Cross Design Variants.' Subject to and without waiving these objections, J&J is not aware of sales of individually branded red cross latex protection gloves prior to January 5, 1905, and otherwise denies the Request." <u>See</u> Second Abram Decl., Ex. 172 (Plaintiffs' Response to Defendants' First Set of Requests for Admission, Response to RFA No. 8) (alteration and emphasis in original).

### Paragraph 191

J&J is currently selling latex gloves in packaging bearing the Red Cross Emblem. <u>See</u> Second Abram Decl., Ex. 170 (Kotei Dep. at 35); First Abram Decl., Ex. 149 (Photograph of J&J Emergency Preparedness Kit).

### Response to Paragraph 191

Disputed. While latex gloves are sold in some of J&J's red cross-branded first aid kits, the individual glove packaging does not bear the Red Cross Emblem. Disputed that the gloves are sold "in packaging bearing the Red Cross Emblem." Like many other items in J&J's first

1418365v.1

aid kits, the gloves do not bear the Red Cross Emblem and are not a J&J Red Cross product. <u>See</u> Second Wallitt Decl., Ex. 137 (photograph of gloves). J&J also objects to the cited reference to the "J&J Emergency Preparedness Kit." The kit pictured in the cited exhibit is the Johnson & Johnson Emergency First Aid Kit. <u>See</u> Abram Decl., Ex. 149.

DATED: December 12, 2007

*[signature: Phyllis S. Wallitt]*
_____
Gregory L. Diskant
Robert W. Lehrburger
Sarah E. Zgliniec
Phyllis S. Wallitt
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

and

Roger L. Zissu
Richard Z. Lehv
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900

*Attorneys for Plaintiffs*

1418365v.1