Jonathan L. Abram
Raymond A. Kurz
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5681
Fax: (202) 637-5910

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> THE AMERICAN RED CROSS, LEARNING CURVE INTERNATIONAL, INC., MAGLA PRODUCTS, LLC, WATER-JEL TECHNOLOGIES, INC., and FIRST AID ONLY, INC., <br><br> Defendants. | 07 Civ. 7061 (JSR/DCF) <br><br> **ECF CASE** <br> **ELECTRONICALLY FILED** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE EXPERT REPORT OF KENNETH B. GERMAIN**

Case 1:07-cv-07061-JSR     Document 75     Filed 12/21/2007     Page 2 of 9

**TABLE OF AUTHORITIES**

**TABLE OF AUTHORITIES**

**Page**

**CASES:**

Atl. Mech., Inc. v. Resolution Trust Corp., 772 F. Supp. 288, 292 (E.D. Va. 1991) .................. 4

Cunningham v. Bienfang, 2002 WL 31553976, at *2-3 (N.D. Tex. Nov. 15, 2002) .................. 5

Freeland v. AT&T Corp., 238 F.R.D. 130, 145 (S.D.N.Y. 2006) ............................................... 1

Highland Capital Mgmt. v. Schneider, 379 F. Supp. 2d 461, 467-473 (S.D.N.Y. 2005) ............ 5

Lincoln Pulp & Paper Co., Inc. v. Dravo Corp., 436 F. Supp. 262, 271 (D. Me. 1977) ............. 4

Marx & Co. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977),
    cert. denied, 434 U.S. 861 (1977 ......................................................................................... 2, 3

Music Sales Corp. v. Morris, 73 F. Supp. 364, 381 (S.D.N.Y. 1999) ........................................ 2-3

Nucor Corp. v. Neb. Pub. Power Dist., 891 F.2d 1343, 1350 (8th Cir. 1989)............................ 4

United States v. Articles of Banned Hazardous Substances, 34 F.3d 91, 96 (2d Cir. 1994) ....... 2

United States v. Parker, 903 F.2d 91, 101 (2d Cir. 1990)............................................................ 3

U.S. Media Corp., Inc. v. Edde Entm't, Inc., 1997 WL 61368, at *1
    (S.D.N.Y. Feb. 13, 1997) ........................................................................................................ 5

**STATUTES:**

18 U.S.C. § 706 ........................................................................................................1, 2, 3, 5

J&J bears the "burden of proving the admissibility of expert evidence," Freeland v. AT&T Corp., 238 F.R.D. 130, 145 (S.D.N.Y. 2006), and J&J's opposition fails to meet it. Again, we mean no disrespect to Mr. Germain, who may very well be a highly qualified lawyer. But in this case, J&J's proffer of his legal opinion about the agency relationships and contracts between ARC and other defendants is impermissible under the controlling case law. In fact, J&J cites not a single case supporting admission of such a legal opinion. The Court should strike him as an expert.

## ARGUMENT

**1. The Proffered Lawyer Testimony is Irrelevant.** J&J proposes to offer Mr. Germain as an expert on agency law. Its legal theory is that in order for a person or firm to use the Red Cross Emblem lawfully under 18 U.S.C. § 706 as a "duly authorized agent" of ARC, ARC must not only authorize that use, as indisputably occurred here, but must also establish that its relationship with the person or firm is a full-fledged, all-encompassing agency relationship, as defined in the common law and the Restatement of Agency. Anything less, J&J asserts, and the person or firm cannot be a "duly authorized agent," and his, her, or its use of the Emblem is a federal crime. And J&J offers a lawyer witness to help the jury understand the vagaries of agency law so they can make that determination.

J&J's proffer of Mr. Germain demonstrates precisely why J&J is wrong in claiming that § 706 imports the law of agency wholesale into its prohibition. By proffering Mr. Germain as an "agency" expert, J&J essentially concedes that under its proposed interpretation of the federal criminal code, ordinary citizens require the assistance of an expert lawyer in order to know whether particular uses of the Emblem do or do not run afoul of § 706. That is not the way criminal prohibitions work. As defendants' summary judgment briefing makes clear, the only

logical reading of § 706 is that Congress meant for "persons of ordinary intelligence" to be able to give the phrase "duly authorized agent" its plain, everyday meaning—persons authorized to use the Emblem on ARC's behalf—thereby enabling the thousands of ARC authorized users to operate on a daily basis without fear that they might be violating federal law. See Defs.' Opp. to J&J's Mot. for Summ. J. at 12. That is precisely the way the Department of Justice read the statute, it is the reading this Court should adopt, and it is a reading that makes Mr. Germain's expert opinion irrelevant.

  **2.**  **The Proffered Lawyer Testimony Is Impermissible.** Even if parsing the law of agency were required here, J&J's proffered expert testimony would still be improper. The agreements and understanding of the parties in this case either established an agency relationship sufficient under § 706, or they did not. Either way, that question is a purely legal one, and therefore in the exclusive purview of the Court. See Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 512 (2d Cir. 1977), cert. denied, 434 U.S. 861 (1977).

 J&J points to no precedent—quite literally, no precedent—to the contrary. Instead, it tries to evade the problem by contending that whether an agency relationship existed here is a mixed question of law and fact, and that where disputed issues of material fact exist, they are properly determined by the fact finder. See J&J Opp. to Defs.' Mot. to Strike at 4. Thus, J&J's argument goes, Mr. Germain's testimony might be admitted to assist the jury in determining the factual aspects of whether a § 706 agency relationship exists. Id. at 5. But this argument gets it wrong too, both as to the law and as to whether disputed facts exist.

 It is clearly the law of this Circuit "that experts are not permitted to present testimony in the form of legal conclusions" as J&J would have Mr. Germain do. See United States v. Articles of Banned Hazardous Substances, 34 F.3d 91, 96 (2d Cir. 1994); Music Sales Corp. v. Morris, 73

F. Supp. 364, 381 (S.D.N.Y. 1999).  Courts certainly do not rely on expert assistance in construing contract terms or the law, Diners' Club, 550 F.2d at 510, 512, nor is such expert testimony appropriate to present to a jury.  Rather, it is the Court's "responsibility . . . to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework."  United States v. Parker, 903 F.2d 91, 101 (2d Cir. 1990).  Thus, J&J's proposed basis for admitting Mr. Germain's testimony is nothing less than that he will do from the witness chair what this Court is responsible to do from the bench, instruct the jury on the applicable law.

  J&J is also incorrect in its premise.  Even if J&J were correct that a lawyer can be offered to testify about domestic law to assist the trier of fact resolve a factual dispute (and it is decidedly wrong), there is no factual dispute on the agency issue that J&J believes to be presented in this case.  To be clear, this is not the average contract dispute, where one party to a contract says it means one thing and the other says it means something else.  Contracts are agreements, and here all parties to the agreements agree, not only about what the contracts said, but also about what they meant, and even about what kind of relationships they established:  an authorized agency relationship for purposes of using the Emblem, subject to ARC's strict control, and veto power, over its use.  The only one who disagrees, apparently, is J&J, who is not a party to the agreements.  And even J&J has failed to raise a fact issue.  Summary judgment briefing is now over, and J&J has offered no evidence at all to suggest any factual dispute about the meaning of the contracts or the understanding of the parties.  That leaves only the purely legal question whether what the contract said and what the parties intended is sufficient to establish that the defendants' authorized uses of the Emblem violated § 706.  So even if lawyer testimony were permitted on matters of United States law, J&J has raised no factual issue on which Mr. Germain's testimony could possibly assist the trier of fact.

J&J also suggests that Mr. Germain should be allowed to testify that the agreements at issue are typical trademark agreements. According to J&J, courts "routinely permit experts to testify whether contract provisions are standard or typical in the relevant area of law." J&J Opp. to Defs.' Mot. to Strike at 3.[1] That is certainly true, but only where there is a factual issue about whether a contract provision is standard or typical. J&J's cases themselves provide examples of situations where such testimony can be adduced: where there is a dispute about: (1) standard industry practices in particular fields, especially technical fields; (2) how the agreements at issue compare with other arrangements in the same field; and (3) how to resolve a dispute as to contract interpretation when a contract uses terms that have acquired a special meaning through trade practice and custom. See, e.g., Atl. Mech., Inc. v. Resolution Trust Corp., 772 F. Supp. 288, 292 (E.D. Va. 1991) (expert testimony permitted on industry standard for length of contract term, where contract parties disagreed about whether contract was unduly burdensome and could be repudiated); Lincoln Pulp & Paper Co., Inc. v. Dravo Corp., 436 F. Supp. 262, 271 (D. Me. 1977) (expert testimony permitted on industry standard for limitation of liability clauses in engineering and construction industry contracts, where contract parties disagreed as to whether ambiguous clause should be read to include or exclude consequential damages); Nucor Corp. v. Neb. Pub. Power Dist., 891 F.2d 1343, 1350 (8th Cir. 1989) (expert testimony permitted to explain ambiguous, technical terminology used in a contract).

But none of that is at issue here. No one is contesting performance based on a claim of standard industry practice, no one is appealing to industry custom to interpret ambiguous contract terminology, and no one has offered any basis to believe that other contracts between trademark holders and licensees have anything whatever to do with the issues in this case. See

---

[1] J&J also says that the defendants did not object to Mr. Germain's report on this issue. Not so. Defendants did, can, and do object. In the motion to strike, defendants asked the court to find Mr. Germain's testimony inadmissible and to strike it in toto. Defs.' Mot. to Strike at 6.

4

U.S. Media Corp., Inc. v. Edde Entm't, Inc., 1997 WL 61368, at *1 (S.D.N.Y. Feb. 13, 1997) (finding expert testimony inadmissible on matters of domestic law where there was no dispute about industry standard); Cunningham v. Bienfang, 2002 WL 31553976, at *2-3 (N.D. Tex. Nov. 15, 2002) ("Unless there is a need to employ specific, technical, or other specialized knowledge to clarify terms of art, science, trade, or other industry-specific language, expert opinion testimony offered to interpret contract language is inadmissible."); see also generally Highland Capital Mgmt. v. Schneider, 379 F. Supp. 2d 461, 467-473 (S.D.N.Y. 2005) (excluding expert testimony where industry standards were not at issue and expert report demonstrated expert's testimony would improperly characterize facts and inappropriately draw legal conclusions from those facts). The agreements say what they say. The only question is whether they establish that ARC adequately authorized the other defendants to use the Emblem, or whether that use violated § 706.

## CONCLUSION

Defendants share J&J's view that the § 706 issue presented in this case can be decided on summary judgment. Should the case go to trial,[2] however, there is simply no place in the courtroom for Mr. Germain or his testimony.

Dated: December 21, 2007                    Respectfully submitted,

                                            HOGAN & HARTSON, L.L.P.

                                            By:      s/ Jonathan L. Abram
                                            Jonathan L. Abram (admitted pro hac vice)
                                            Raymond A. Kurz (admitted pro hac vice)
                                            555 Thirteenth Street, N.W.

---

[2] Defendants renew the request made in their Motion to Strike that if the Court permits any portion of Mr. Germain's proffered testimony, defendants be allowed to serve a rebuttal expert report within ten days of the date the Court rules on the motion to strike.

5

        Washington, D.C. 20004
        Tel:  (202) 637-5681
        Fax:  (202) 637-5910

        Attorneys for Defendants

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on the 21st day of December, 2007, I caused a true and correct copy of the foregoing to be served upon the following via the Court's ECF Notification System:

>Gregory L. Diskant
>Sarah Elizabeth Zgliniec
>Patterson, Belknap, Webb & Tyler LLP
>1133 Avenue of the Americas
>New York, NY 10036
>Tel:  (212) 336-2710
>Fax:  (212) 336-2222
>E-mail:  gldiskant@pbwt.com
>E-mail:  sezgliniec@pbwt.com
>
>Richard Zachary Lehv
>Roger L. Zissu
>Fross Zelnick Lehrman & Zissu, P.C.
>866 United Nations Plaza
>New York, NY 10004
>Tel:  (212) 813-5900
>Fax:  (212)-813-5901
>E-mail:  rlehv@frosszelnick.com
>E-mail:  rzissu@frosszelnick.com

>      s/ Jonathan L. Abram      
>         Jonathan L. Abram