```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JOHNSON & JOHNSON and JOHNSON &          :
JOHNSON CONSUMER COMPANIES, INC.,        :
                                         :      07 Civ. 7061 (JSR)
               Plaintiffs,               :
                                         :      MEMORANDUM
          -v-                            :
                                         :
THE AMERICAN NATIONAL RED CROSS, et      :
al.,                                     :
                                         :
               Defendants.               :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

According to the First Amended Complaint ("Complaint"), Johnson & Johnson was making commercial use of the Red Cross Emblem -- consisting of a Greek-style red cross on a white background -- as early as 1879. Complaint ¶¶ 23-25. Three years later, Congress, at the instance of Clara Barton (the founder of the organization commonly known as the American Red Cross), ratified the First Geneva Convention, which provided for the Red Cross Emblem to be the sign of those serving the wounded in battlefield. Complaint ¶¶ 34-35. In 1900, Congress chartered the American Red Cross for the purpose of carrying on a system of national and international relief in both war and peace. Complaint ¶ 37. In 1906, Johnson & Johnson registered the Red Cross Emblem as a trademark used on various of its products. Complaint ¶ 31.

Over the years, the latent tension between these parallel uses of the Red Cross Emblem periodically surfaced, notably during 1942 Congressional hearings to consider, among other things, legislation, never enacted, that would ban commercial uses of the Red Cross

Emblem.  Complaint ¶¶ 63-70.  In 2006, however, the American Red Cross licensed the use of its name and emblem to various manufacturers of products, such as first aid kits, that compete with Johnson & Johnson products that also bear the Red Cross Emblem.  Complaint ¶¶ 80-81, 87-89.  The result is the instant lawsuit, in which Johnson & Johnson alleges, in eight counts, that the American Red Cross and the aforementioned manufacturers committed various violations of state and federal law.

Shortly after the lawsuit commenced, the defendants moved to dismiss five of the eight counts for failure to state a claim.  But by Order dated November 5, 2007, the Court granted the motion only as to the Fourth Claim, which alleges that the American Red Cross's licensing scheme is barred by the New York law of promissory estoppel.  In addition, however, the Court limited the First Claim, which alleges tortious interference with prospective economic advantage under New York law, to interference with Johnson & Johnson's business relationships with the store chains known as Target, Wal-Mart, Walgreens, and CVS.  This Memorandum states the reasons for these two rulings.

With respect to the Fourth Claim, a party seeking to state a claim for promissory estoppel under New York law must allege that "(1) a speaker made a clear and unambiguous promise; (2) it was reasonable and foreseeable for the party to whom the promise was made to rely upon the promise; and (3) the person to whom the promise was made relied on the promise to his or her detriment."  Henneberry v.

Sumitomo Corp. of Am., 2007 WL 2068346 at *8 (S.D.N.Y. 2007). See Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996); Dulien Steel Prods., Inc. v. Bankers Trust Co., 298 F.2d 836, 842 (2d Cir. 1962). Here, the Complaint alleges that the American Red Cross made statements during the aforementioned 1942 Congressional hearings on which a claim of promissory estoppel can be premised. Specifically, the Complaint alleges that the the American Red Cross assured Congress, both orally and in writing, that the American Red Cross had not previously engaged in any commercial venture for profit, had no intention of doing so, and was seemingly barred by its charter from so doing. Complaint ¶¶ 63-70.[1] None of these statements, however, constitutes a clear and unambiguous promise that the American Red Cross would never engage in such a venture even 60 or more years later; none of the assurances was made expressly to Johnson & Johnson (whose representative was present at the hearing), as opposed to Congress; and it would not, in any event, have been reasonable for Johnson & Johnson to regard these assurances to Congress as promises made to Johnson & Johnson on which Johnson & Johnson could rely for the indefinite future. Accordingly, Johnson &

---

[1] While the Complaint itself quotes several passages to this effect, the 1942 hearing testimony is also incorporated into the Complaint by reference and constitutes a public record of which the Court can take judicial notice. The Court can therefore consider the entire hearing testimony on this motion. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d. Cir. 2002).

3

Johnson's Complaint fails as a matter of law to allege the essentials of a claim for promissory estoppel.[2]

With respect to the First Claim, a party seeking to state a claim under New York law for tortious interference with prospective economic advantage must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003). Construing these requirements in the context of New York pleadings, New York courts have dismissed complaints that failed to allege the specific business relationship that was interfered with. See, e.g., Baker v. Guardian Life Ins. Co. of Am., 12 A.D.3d 285, 286 (1st Dept. 2004) (affirming dismissal of complaint where plaintiff did not "identify any specific employment or business relationship that he was prevented from entering into as a result of defendants' interference"); Vigoda v. DCA Prod. Plus Inc., 293 A.D.2d 265, 266-67 (1st Dept. 2002) (reversing trial court's denial of motion to dismiss; "[t]ortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct. As

---

[2] The Court does not therefore reach defendant's additional argument that Johnson & Johnson's promissory estoppel claim is barred by the so-called "Noerr-Pennington doctrine." See Bristol Myers Squibb Co. v. IVAX Corp., 77 F.Supp.2d 606, 616-17 (D.N.J. 2000) (so holding).

4

plaintiffs cannot name the parties to any specific contract they would have obtained had they performed at the NACA showcase, they have failed to satisfy the but for causation required by this tort") (internal quotation marks and citations omitted); <u>Sch. of Visual Arts v. Kuprewicz</u>, 771 N.Y.S.2d 804, 813 (N.Y.Sup. 2003) ("It is well-settled that an essential element of this tort is that the plaintiff would have consummated a contract with another person <u>but for</u> the interference of the defendant . . . Thus, since plaintiffs fail to allege that any contract would have been entered into in the absence of [defendant's] interference, this claim must be dismissed") (emphasis in original).

While several courts in this District have reached the same conclusion in the context of federal pleading rules, <u>see</u>, e.g., <u>Gianni Versace, S.P.A. v. Versace</u>, 2003 WL 470340 at *2 (S.D.N.Y. 2003); <u>Envirosource, Inc. v. Horsehead Res. Dev. Co., Inc.</u>, 1996 WL 363091 (S.D.N.Y. 1996), others have concluded that federal rules of pleading do not require such specificity, <u>see</u>, e.g., <u>Leadsinger, Inc. v. Cole</u>, 2006 WL 2320544 at *12-14 (S.D.N.Y. 2006); <u>Reading Int'l., Inc. v. Oaktree Capital Mgmt. LLC</u>, 317 F.Supp.2d 301, 334-35 (S.D.N.Y. 2003); <u>Shred-It, USA, Inc. v. Mobile Data Shred, Inc.</u>, 202 F.Supp.2d 228, 236-37 (S.D.N.Y. 2002). Whether these latter rulings survive the Supreme Court's recent tightening of federal pleading requirements, <u>see</u> <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007) (abrogating the rule of <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief," and imposing instead a requirement that a complaint "must possess enough heft to show that the pleader is entitled to relief") is an interesting question, but not one the Court need reach here.  This is because Johnson & Johnson, in its papers to this Court, represents that the relationships with which the defendants allegedly tortiously interfered are Johnson & Johnson's relationships with the chains known as Target, Wal-Mart, Walgreens and CVS.  Plaintiffs' Memorandum of Law at 8.  For all practical purposes, this is sufficient notice to avoid dismissal of the First Claim; but, to avoid prejudice to the defendants, the First Claim will be limited to interferences with Johnson & Johnson's business relationships with those four entities.

As for defendants' additional arguments for dismissing the First Claim, as well as their arguments for dismissing the Second, Seventh and Eighth claims, these arguments are without merit and warrant no discussion here.  Counsel are reminded that oral argument on the summary judgment motions in this case will proceed on January 4, 2008 at 2:00 p.m.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          January 2, 2008

6